**PELTON & ASSOCIATES PC**
Brent E. Pelton
Taylor B. Graham
Alison G. Lobban
111 Broadway, Suite 1503
New York, NY 10006

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RVIN REYES, ISRAEL CORTES CRUZ, EDISON AGUIRRE, BENIGNO PERALTA, JR., GERRY ROXAS, ARIES BAYABORDA, BENCHER MONTEBON, ARNIEL GOMEZ and SHERIDAME GARCIA, Individually and on Behalf of All Others Similarly Situated,** | **13 Civ. 9051 (NSR)** |
| **Plaintiffs,** | **SECOND AMENDED CLASS & COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| **CITY OF RYE, RYE GOLF CLUB, RM STAFFING & EVENTS, INC. and SCOTT YANDRASEVICH, Jointly and Severally,** | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiffs Rvin Reyes, Israel Cortes Cruz, Edison Aguirre, Benigno Peralta, Jr., Gerry

Roxas, Aries Bayaborda, Bencher Montebon, Arniel Gomez and Sheridame Garcia (collectively,

"Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives,

upon personal knowledge as to themselves and upon information and belief as to other matters,

allege as follows:

### NATURE OF THE ACTION

1.      Plaintiffs are current and former waiters and bartenders at Defendants' Whitby

Castle restaurant and event space located at Rye Golf Club and/or Morris Yacht & Beach Club.

Plaintiffs bring this action to recover unpaid overtime wages owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unlawful misappropriation of gratuities, unpaid spread of hours premiums, for certain unreimbursed business expenses; and for failure to provide wage notices pursuant to Article 6 of the NYLL §§ 190 *et seq.* and the supporting regulations. Finally, Plaintiffs bring their claim for breach of contract, quantum meirut, unjust enrichment, and conversion under New York common law.

2. Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated wait staff, bartenders, bussers/runners, kitchen staff, dishwashers and all other hourly employees of Defendants, and their NYLL and New York common l pursuant to 15(a) of the Federal Rules of Civil Procedure law claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all wait staff, bartenders, bussers/runners, kitchen staff, dishwashers and other hourly employees who worked for Defendants in New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

5. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

6.      Plaintiffs RVIN REYES ("Reyes"), ISRAEL CORTES CRUZ ("Cruz"), EDISON AGUIRRE ("Aguirre"), BEGNINO PERALTA ("Peralta"), GERRY ROXAS ("Roxas"), ARIES BAYABORDA ("Bayaborda"), BENCHER MONTEBON ("Montebon"), ARNIEL GOMEZ ("Gomez") and SHERIDAME GARCIA ("Garcia" and, collectively with Reyes, Cruz, Aguirre, Peralta, Roxas, Bayaborda, Montebon and Gomez, the "Plaintiffs") were, at relevant times, adult individuals residing in Bronx, Queens and Westchester Counties, New York.

7.      Throughout the relevant time period, Plaintiffs performed work for Defendants at Whitby Castle, located at 330 Boston Post Road, Rye, NY 10580 and/or Morris Yacht and Beach Club, located at 25 City Island Avenue, Bronx, NY 10464.

8.      Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their written consent forms are attached hereto and incorporated by reference.

**Defendants:**

9.      The City of Rye ("Rye") is a municipality located in Westchester County, New York.  Rye owns, operates, and manages Defendant Rye Golf Club and its on-site restaurant and events space, Whitby Castle ("Whitby"). Rye Golf Club and Whitby are hereinafter referred to jointly as "RGC."  RGC is located at 330 Boston Post Road, Rye, NY 10580.

10.     Upon information and belief, RM Staffing & Events, Inc. ("RM Staffing") is an active New York Corporation with its principle place of business at 4 Nursery Lane, Suite 4, Rye, NY 10580.  RM Staffing is a contractual staffing company which provided contractual labor to Rye at RGC.  RM Staffing also provided contractual labor to Morris Yacht and Beach Club ("Morris").

11.     At all relevant times, the RM Staffing and Rye operated together as a single business enterprise utilizing the same practices and policies.

12.     Scott Yandrasevich ("Yandrasevich" or the "Individual Defendant" and, collectively with Rye and RM Staffing, the "Defendants") was the general manager of RGC, an operator of RM Staffing, and, beginning in or around September 2010, the person in charge of staffing Morris.  Throughout the relevant time period, the Individual Defendant, through his position with Rye at RGC, was in charge of hiring and firing employees, setting schedules and wage rates, determining the Defendants' policies with respect to payroll and gratuities, and otherwise running the business of RGC and RM Staffing.

13.     The Individual Defendant participated in the day-to-day operations of RGC and RM Staffing and acted intentionally and maliciously in his direction and control of Plaintiffs and the Defendants' other similarly situated employees and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

14.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

15.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b) Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since December 20, 2010 and through the entry of judgement in this case (the "Collective Action Period") who worked as wait staff, bartenders,

> bussers/runners, kitchen staff, dishwashers and/or all other hourly
> employees (the "Collective Action Members").

16.     A collective action is appropriate in this circumstance because Plaintiffs and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policy of failing to pay overtime premiums for work performed over forty (40) hours each

week.  As a result of this policy, Plaintiffs and the Collective Action Members did not receive

the legally-required overtime premium payments for all hours worked in excess of forty (40) per

week.

17.     Plaintiffs and the Collective Action Members have substantially similar job duties

and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ALLEGATIONS

18.     Pursuant to the NYLL and New York common law, Plaintiffs bring their Second

through Tenth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf

of themselves and the following class:

> All persons employed by Defendants in New York at any time
> since December 20, 2007 and through the entry of judgment in this
> case (the "Class Period") who worked as wait staff,
> bussers/runners, bartenders, kitchen staff, dishwashers and/or all
> other hourly employees (the "Class Members").

19.     The Class Members are readily ascertainable.  The number and identity of the

Class Members are determinable from the records of Defendants.  For purposes of notice and

other purposes related to this action, their names and addresses are readily available from

Defendants.  Notice can be provided by means permissible under Federal Rule of Civil

Procedure 23.

20.     The Class Members are so numerous that joinder of all members is impracticable.

21.     Upon information and belief, there are well in excess of forty (40) Class

Members.

22.     There are questions of law and fact common to the claims of Plaintiffs and the claims of the Class.   Such common questions will determine Defendants' liability to all (or nearly all) Class Members.   These common questions include whether Defendants had a corporate policy of: failing to pay overtime premiums when employees worked in excess of forty (40) hours per week; failing to pay an additional hour's wage at minimum wage when employees worked shifts lasting ten (10) or more hours or when employees worked a split shift; requiring employees to pay out-of-pocket for business expenses of the Defendants; unlawfully withholding tips, gratuities and "service charges" left by patrons for the Class Members; failing to provide wage notices at the time of hire and on February 1 of each year; confiscating cash tips from Class Members' hands; and charging a "service charge" to patrons and representing said service charge as a tip or gratuity for Class Members but failing to distribute said tip or gratuity to Class Members.

23.     Plaintiffs' claims are typical of the Class Members' claims.   Plaintiffs, like all Class Members, are restaurant employees of Defendants who work for Defendants pursuant to their corporate policies.   Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not given any gratuities or tips which were left for them by patrons, and did not receive proper wage statements and wage notices.   If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

24.     Plaintiffs and their Counsel will fairly and adequately represent the Class.   There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

25.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

26.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.   what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.   whether Defendants charged a mandatory "service charge" to patrons which patrons believed to be a tip or gratuity for Plaintiffs and Class Members;

e.   whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premium pay for hours worked in excess of forty (40) hours per workweek;

f.   whether Defendants illegally retained gratuities left by customers and failed to pay all such gratuities to the Plaintiffs and Class Members;

g.   whether Defendants took cash tips from the hands of Plaintiffs and the Class Members;

h.   whether Defendants required Plaintiffs and the Class Members to pay out-of-pocket for business expenses of the Defendants;

i.   whether Defendants failed to pay Plaintiffs and the Class Members an additional hour of pay for each hour worked in excess of ten (10) hours in one day and an additional

hour of pay for each split shift worked in a day;

j.    whether Defendants failed to provide wage notices to Plaintiffs and the Class Members on their date of hire and/or on February 1 of each year, as required by NYLL § 195; and

k.    whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

27.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

28.    Defendants are sophisticated parties with substantial resources.  The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

29.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Restaurants**

30.    At all relevant times, Rye has owned and operated RGC and its on-site restaurant and events space, Whitby.  According to the RGC website at http://www.ryegolfclub.com, RGC is a "member-only club owned by the City of Rye."

31.    According to the Whitby website at http://www.whitbycastle.com, Whitby is a restaurant and event space located at RGC.  The website explains that "Whitby Castle is a

wonderful venue that has always been a proud staple of Rye. The fabulous restaurant is open to the public as well as the members of the Rye Golf Club….Whitby Castle is the perfect place for a casual evening out with friends or family, special occasions, private parties, weddings or other special catered events."

32.    Defendant Yandrasevich was employed by Rye as the general manager of RGC from in or around March 2002 through approximately January 2013.  As general manager of RGC, Yandrasevich drew a salary from Rye and acted on behalf of Rye and Rye's RGC Commission in performing his duties at RGC.  In his capacity as general manager of RGC, upon information and belief, Yandrasevich was in charge of staffing RGC with employees, including the Plaintiffs and Class Members, for, among other things, the restaurant's daily operations and for catered events.

33.    According to the Summary Report of the City Council's Investigation Into the Rye Golf Club, dated February 27, 2013 (the "Rye City Council Report"), throughout the relevant time period, Rye's City Manager has been responsible for supervising Yandrasevich in his duties as the general manager of RGC.  In addtion, Rye's City Manager and City Comptroller are responsible for reviewing and approving purchase orders and invoices, including, upon information and belief, invoices to Rye for the wages of RGC staff.

34.    According to the Rye City Council Report, RM Staffing, through Yandrasevich, obtained a contract to have RGC operate the food and beverage services at Morris, beginning in or around September 2010.  Pursuant to this contract with Morris, Yandrasevich used various RGC employees, including Plaintiffs and Class Members, to staff Morris events while also using RGC equipment for these events.  Upon information and belief, Yandrasevich also billed RGC for the work that these employees performed at Morris.

35.     Upon information and belief, Rye, through Yandrasevich, its general manager of RGC, and through the oversight from its City Manager, at all relevant times, acted as Plaintiffs' and Class Members' employer or joint employer by, inter alia, hiring and firing RGC employees, determining the wages that they were to be paid, and setting the policies complained of herein.

36.     At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

37.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

38.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

39.     Upon information and belief, at all relevant times, Defendants Rye and RM have had gross annual revenues in excess of $500,000.00.

**Plaintiffs' Work for Defendants**

40.     Plaintiff Reyes has worked for Defendants as a waiter and bartender at RGC beginning in or around March 2010 through the present (the "Reyes Employment Period").

41.     Throughout the Reyes Employment Period, Reyes has typically worked both the lunch and dinner shift, five (5) days per week: Wednesday, Thursday, Friday, Saturday and Sunday, for between eleven (11) and thirteen (13) hours per day, for a total of between approximately fifty-five (55) to sixty-five (65) hours per week.

42.     For his work, throughout the Reyes Employment Period, Defendants have paid Reyes approximately $10.00 per hour.

43.     Beginning in or around March 2013, despite the fact that Reyes typically worked

in excess of forty (40) hours each week, Defendants paid Reyes his regular hourly rate ($10.00 per hour) for all hours worked, including hours over forty (40) in a given workweek. Reyes did not receive the legally-required overtime premium pay of one and one-half (1.5) times his regular hourly rate for hours worked in excess of 40 in a given workweek. Upon information and belief, Defendants' failure to pay overtime premiums is a policy that applies to all of Defendants' wait staff, bussers/runners, bartenders, dishwashers and kitchen staff.

44.     Plaintiff Cruz worked as a waiter for Defendants at RGC from in or around December 2006 through in or around February 12, 2013 (the "Cruz Employment Period").

45.     Throughout the Cruz Employment Period, Cruz typically worked both the lunch and dinner shifts, four (4) days per week: Thursday, Friday, Saturday and Sunday, for approximately fifteen (15) hours per day, for a total of approximately sixty (60) hours per week.

46.     For his work, from the beginning of the Cruz Employment Period through December 2007, Cruz was paid approximately twelve dollars ($12.00) per hour.   From approximately January 2008 through February 2013, Cruz was paid fourteen dollars ($14.00) per hour.

47.     Plaintiff Aguirre worked as a waiter for Defendants at RGC from in or around May 2012 through in or around November or December 2012 (the "Aguirre Employment Period").   Throughout the Aguirre Employment Period, Aguirre worked the lunch and/or dinner shift at Defendants' restaurant almost every Saturday and the brunch and/or dinner shift at Defendants' restaurant almost every Sunday.   When he worked double shifts, Aguirre would typically work at least twelve (12) hours during the day.

48.     For his work, throughout the Aguirre Employment Period, Aguirre was paid approximately eleven dollars and fifty cents ($11.50) per hour.

49.     Plaintiff Garcia worked as a waitress for Defendants at RGC from in or around May 2012 through in or around November or December 2012 (the "Garcia Employment Period"). Throughout the Garcia Employment Period, Garcia worked the lunch and/or dinner shift at RGC almost every Saturday and the brunch and/or dinner shift at RGC almost every Sunday. When she worked double shifts, Garcia would typically work at least twelve (12) hours for the day.

50.     For her work, throughout the Garcia Employment Period, Garcia was paid approximately eleven dollars and fifty cents ($11.50) per hour.

51.     Plaintiff Peralta worked as a waiter and bartender for Defendants at RGC from in or around June or July 2008 through in or around July or August 2011 and at Morris from in or around July or August 2011 until in or around November 2013 (the "Peralta Employment Period"). Throughout his employment with Defendants, Peralta typically worked Tuesday through Sunday from approximately 11:00 am until between 10:00 pm and midnight (12:00 am).

52.     For his work, throughout the Peralta Employment Period, Peralta was paid approximately ten dollars ($10.00) per hour.

53.     Plaintiff Roxas worked as a waiter for Defendants at RGC from in or around April or May 2009 through in or around October 2010 and at Morris from in or around October 2010 through in or around November 2013 (the "Roxas Employment Period"). Throughout the Roxas Employment Period, Roxas typically worked Tuesday through Sunday beginning at approximately 11:00 am until between 10:00 pm and midnight (12:00 am).

54.     For his work, throughout the Roxas Employment Period, Roxas was paid approximately ten dollars ($10.00) per hour.

55.     Plaintiff Gomez has worked for Defendants as a waiter and bartender beginning in

or around September 2008 through the present (the "Gomez Employment Period"). Throughout the Gomez Employment Period, Gomez has typically worked both the lunch and dinner shifts, five (5) days per week: Tuesday, Thursday, Friday, Saturday and Sunday, from approximately 11:00 am through approximately 10:00 pm, with the exception that on Sundays he works from approximately 11:00 am through approximately 7:30 pm. Throughout the Gomez Employment Period, Gomez has typically worked approximately sixty-three and a half (63.5) hours per week.

56.     For his work, when he first started working for Defendants, Gomez was paid approximately nine dollars and seventy-five cents ($9.75) per hour. Presently, Gomez is paid ten dollars ($10.00) per hour.

57.     Beginning in or around March 2013, despite the fact that Gomez typically worked in excess of forty (40) hours each week, Defendants paid Gomez his regular hourly rate ($10.00 per hour) for all hours worked, including hours over forty (40) in a given workweek. Gomez did not receive the legally-required overtime premium pay of one and one-half (1.5) times his regular hourly rate for hours worked in excess of forty (40) in a given workweek. Upon information and belief, Defendants' failure to pay overtime premiums is a policy that applies to all of Defendants' wait staff, bussers/runners, bartenders, dishwashers and kitchen staff.

58.     Plaintiff Bayaborda has worked for Defendants as a waiter beginning in or around March 2012 through the present (the "Bayaborda Employment Period"). Throughout the Bayaborda Employment Period, Bayaborda has typically worked both the lunch and dinner shift, six (6) days per week: Tuesday, Wednesday, Thursday, Friday, Saturday and Sunday, from approximately 11:00 am to between 10:00 pm and 11:00 pm Tuesdays through Saturdays and from approximately 11:00 am to  between 4:00 pm and 5:00 pm on Sundays, for a total of between sixty (60) and sixty-six (66) hours per week.

59.     For his work, throughout the Bayaborda Employment Period, Defendants have paid Bayaborda ten dollars ($10.00) per hour.

60.     Beginning in or around March 2013, despite the fact that Bayaborda typically worked in excess of forty (40) hours each week, Defendants paid Bayaborda his regular hourly rate ($10.00 per hour) for all hours worked, including hours over forty (40) in a given workweek. Bayaborda did not receive the legally-required overtime premium pay of one and one-half (1.5) times his regular hourly rate for hours worked in excess of forty (40) in a given workweek. Upon information and belief, Defendants' failure to pay overtime premiums is a policy that applies to all of Defendants' wait staff, bussers/runners, bartenders, dishwashers and kitchen staff.

61.     Plaintiff Montebon has worked for Defendants as a waiter beginning in or around April 2012 through the present (the "Montebon Employment Period"). Throughout the Montebon Employment Period, Montebon has typically worked both the lunch and dinner shift, six (6) days per week: Tuesday, Wednesday, Thursday, Friday, Saturday and Sunday, from approximately 11:00 am to between approximately 10:00 pm and 11:00 pm Tuesday through Saturday and from approximately 11:00 am to approximately 7:30 pm on Sundays, for a total of between sixty-three and a half (63.5) and sixty-eight and a half (68.5) hours per week.

62.     For his work, throughout the Montebon Employment Period, Defendants have paid Montebon ten dollars ($10.00) per hour.

63.     Beginning in or around March 2013, despite the fact that Montebon typically worked in excess of forty (40) hours each week, Defendants paid Montebon his regular hourly rate ($10.00 per hour) for all hours worked, including hours over forty (40) in a given workweek. Montebon did not receive the legally-required overtime premium pay of one and one-half (1.5) times his regular hourly rate for hours worked in excess of forty (40) in a given workweek. Upon

information and belief, Defendants' failure to pay overtime premiums is a policy that applies to all of Defendants' wait staff, bussers/runners, bartenders, dishwashers and kitchen staff.

**Defendants' Unlawful Corporate Policies**

64.      Upon information and belief, patrons of Defendants' restaurants would pay gratuities, tips and/or "service charges" to Defendants on their member cards and/or credit cards with the intention that these gratuities/tips and/or "service charges" be paid to Plaintiffs and Class Members.

65.      Upon information and belief, Defendants represented to its patrons that their gratuities, tips and/or "service charges" would be distributed to Plaintiffs and Class Members.

66.      For the Plaintiffs and Class Members who worked at RGC, from the beginning of the Class Period until in or around March 2013, while Plaintiffs typically collected several hundred dollars in cash, credit card and RGC member card gratuities each shift, they were forced to give all cash payments directly to the manager or cashier on duty and were never paid any of the cash, credit card or RGC member card gratuities.  Defendants' failure to pay any gratuities to Plaintiffs was a policy that applied to all of Defendants' wait staff, bussers/runners and bartenders at RGC throughout the relevant period.

67.      For Plaintiffs and Class Members who performed work at Morris, from the beginning of the Class Period until in or around July or August 2013, while Plaintiffs typically collected several hundred dollars in credit card and Morris member card gratuities each shift, they were never paid any of the credit card or Morris member card gratuities.  Defendants' failure to pay any credit card or Morris member card gratuities to Plaintiffs was a policy that applied to all of Defendants' wait staff, bussers/runners and bartenders who performed work at Morris throughout the relevant period.

68.     Upon information and belief, Defendants required Plaintiffs and Class Members to hand all cash tips collected to Defendants.   These cash tips were never redistributed to Plaintiffs or Class Members.

69.     Plaintiff Aguirre complained to Defendant Yandrasevich about not receiving tips, but Yandrasevich told him that the "tips covered the losses by the restaurant."   Furthermore, Aguirre complained to his manager, Gregory Colica ("Colica"), who told him that the policy of not permitting employees to receive tips was "in the contract" between RGC and RM Staffing.

70.     In a public meeting of the Rye's RGC Commission held on October 9, 2012, Defendant Yandrasevich admitted that the gratuities and service charges left by RGC members were not passed along to the RGC employees but were instead used to "off-set labor costs." Specifically, Yandrasevich stated that "gratuities, if they are left, go to the club" and that this gratuity money becomes "part of the restaurant revenue…"

71.     Notwithstanding the fact that throughout their respective employment periods with Defendants Plaintiffs have routinely worked in excess of ten (10) hours in a day and/or split shifts, Defendants failed to pay Plaintiffs spread of hours premium pay equal to an additional hour of minimum wage for such days when Plaintiffs worked in excess 10 for the day and/or for working a split shift.   Defendants' failure to pay Plaintiffs spread of hours premiums is a policy of Defendants which applied to all of Defendants' employees working ten (10) or more hours in a day and/or split shifts.

72.     Throughout their respective employment periods with Defendants, while working at RGC and Morris, the Plaintiffs and Defendants' other front-of-the-house employees have been required to wear a specific uniform.   At RGC in the winter, Plaintiffs are required to wear a white long sleeve shirt, vest and tie.   At RGC, in the summer, Plaintiffs are required to wear a

"Rye Golf Club" polo shirt, of which two (2) are provided by Defendants.  At Morris, Plaintiffs were required to wear a "Morris Beach & Yacht Club" polo shirt provided by Defendants. Plaintiffs are responsible for all dry cleaning and/or laundering of their uniforms and Defendants do not reimburse Plaintiffs for these costs.  Failing to reimburse Plaintiffs for the cost of maintaining their requierd uniforms is a policy that applies to all of Defendants' employees required to wear uniforms.

73.     Plaintiffs and the Collective Action Members/Class Members were all paid pursuant to the same policies of Defendants that applied to their hourly restaurant employees, including: withholding gratuities; failing to pay spread of hours and overtime premiums; and failing to reimburse for certain business expenses.

74.     Upon information and belief, throughout the Class Period, Defendants have employed other individuals who worked as wait staff, bartenders, busboys/runners, dishwashers and kitchen staff who Defendants improperly denied overtime compensation.  Such individuals were also not paid spread-of hours pay when working split shifts or over ten (10) hours per day and were not reimbursed for certain business expenses.  Further, the Defendants illegally retained all of the gratuities left by customers and members of RGC and all of the credit card and member card gratuities left by customers of Morris.

75.     Defendants failed to provide notice to Plaintiffs and Class Members with wage notice as required by the NYLL at the date of their hiring and/or by Feburary 1 of each year. Defendants' failure to provide proper wage notices were corporate policies that applied to all Plaintiffs and Class Members.

76.     Plaintiffs' and Class Members' work was performed in the normal course of Defendants' business and was integrated into Defendants' business.

77.     The work performed by Plaintiffs and Class Members required little skill and no capital investment.

78.     Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.  Upon information and belief, such individuals were not paid time and one-half when working in excess of forty (40) hours per week, were not paid spread-of hours pay when working split shifts or over ten (10) hours per day or split-shifts, were not reimbursed for certain business expenses and were not allowed to retain gratuities left by customers.

79.     As stated, the exact number of such similarly situated individuals is presently unknown but is believed to be well in excess of forty (40) individuals and can be ascertained through appropriate discovery.

80.     Upon information and belief, throughout all relevant time periods and during the course of Plaintiffs' and Class Members' own employment, Defendants failed to post or keep posted a notice explaining overtime pay rights provided by the FLSA and/or the NYLL.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**

81.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.     By failing to pay Plaintiffs overtime wages at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

83.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

84.     Defendants' failure to pay overtime wages caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**

85.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

86.     Defendants willfully violated Plaintiffs' and the Class  Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) per week, in violation of the NYLL and regulations promulgated thereunder.

87.     Defendants' failure to pay overtime caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS**

88.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as

though fully set forth herein.

89.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one (1) hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7. (2010), 146-1.6 (2012).

90.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNLAWFUL WITHOLDING OF GRATUITIES

91.    Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

92.    Defendants have failed to compensate Plaintiffs and the Class Members for all gratuities earned by withholding gratuities left by patrons for Plaintiffs and the Class, in violation of § 196-d of the NYLL.  Accordingly, Defendants are now required to compensate Plaintiffs and the Class Members for all gratuities wrongfully withheld by Defendants.

93.    The Defendants' NYLL violations have caused Plaintiffs and the Class Members irreparable harm for which there is no adequate remedy at law.

94.    Due to the Defendants' NYLL violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid gratuities, damages for unreasonably delayed payment of wages, liquidated/punitive damages, pre and post-judgment interest, reasonable

attorneys' fees, and costs and disbursements of the action pursuant to NYLL § 663(1) *et al* and § 196-d.

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNREIMBURSED BUSINESS EXPENSES

95.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

96.     Defendants required Plaintiffs to wear a certain uniform when they worked for Defendants, but did not reimburse Plaintiffs for the cleaning of these uniforms.  Accordingly, Defendants are required to compensate Plaintiffs for all business expenses that Defendants required Plaintiffs to incur without reimbursement.

97.     The Defendants' NYLL violations have caused Plaintiffs and Class Members irreparable harm for which there is no adequate remedy at law.

98.     Due to Defendants' NYLL violations, Plaintiffs are entitled to recover damages from Defendants in the amount of Defendants' unreimbursed business expenses for which Plaintiffs and the Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL § 663(1) *et seq.* and § 196-d.

### SIXTH CAUSE OF ACTION
### NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS

99.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

100.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiffs and the Class Members as their primary language,

containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

101.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, § 198(1-b)., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK COMMON LAW – BREACH OF CONTRACT

102.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

103.    Upon information and belief, Defendants entered into oral, implied and/or express contracts with patrons for the payment of gratutities/tips and/or "service charges" to Plaintiffs and the other members of the putative Class ("Gratuities Contracts").

104.    These Gratuities Contracts were made for the benefit of Plaintiffs and the members of the putative Class who were personally providing the food and beverage services that each such gratuity/tip and/or "service charge" was collected upon.

22

105.    Defendants, in connection with the contracts referenced in paragraph 96, also made promises to its patrons who were parties to such contracts that no part of the gratuities/tips and/or "service charges" paid under such contracts were to be retained by Defendants for their own profit.

106.    The Defendants, knowing that its patrons believed Defendants were making the promises set forth in paragraph 98 made no attempt to advise its customers that no such promise was, in fact, being made or kept by Defendants.

107.    Defendants intentionally allowed its patrons to believe that the promises set forth in paragraphs 98 to 99 being made and kept by the Defendants.

108.    Defendants intentionally concealed from its patrons, and refused to reveal to its patrons or the public that it was breaching such contracts and the promises set forth in paragraphs 98 and 99 by taking all or a portion of such service charges for its own profit and not distributing it to the Plaintiffs or the putative Class members who personally provided the services for which such charges were collected.

109.    Defendants, as a result of the conduct alleged in the foregoing paragraphs, is now estopped from denying the promises set forth in paragraphs 98 and 99 were made and that the Plaintiffs and members of the putative Class were the intended beneficiaries of such promises.

110.    Defendants' patrons reasonably relied upon Defendants' promises that the service charges paid to Defendants by their patrons pursuant to the contracts between Defendants and such patrons would be paid, and were being paid, to Plaintiffs and the members of the putative Class providing services upon which such charges were imposed.

111.    Plaintiffs and members of the putative Class were the intended beneficiaries of the contracts alleged herein to exist between Defendants and their patrons and the promises set forth

23

in paragraphs 98 and 99.

112.    It is alleged, based upon facts set forth in paragraphs 61 to 63, that Defendants retained all of the collected gratuities/tips and/or "service charges" collected for its own profit and benefit in violation of the promises set forth in paragraphs 98 and 99.

113.    Defendants breached the contracts set forth in paragraph 96 by retaining for its benefit and failing to pay Plaintiffs and the members of the putative Class the gratuities/tips and/or "service charge" left by patrons for Plaintiffs and the members of the putative Class.

114.    Defendants' aforesaid conduct has caused the Plaintiffs and members of the putative Class damages in that they have failed to receive the full intended benefit of the contracts between the Defendants and their patrons, to wit, they have not received any share whatsoever of gratuities/tips and/or "service charges" the Defendants have improperly, and in breach of their contracts with their patrons, failed to distribute to such persons.

115.    As a result, Plaintiffs and the members of the putative Class have been damaged and are entitled to recover from Defendants their unpaid compensation, interest, reasonable attorneys' fees, and costs and disbursements of the action.

**EIGHTH CAUSE OF ACTION**
**NEW YORK COMMON LAW – QUANTUM MEIRUT (Pled in the Alternative)**

116.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

117.    Plaintiffs and members of the putative Class have performed numerous and valuable services at the request and for the benefit of Defendants.

118.    As a result, Plaintiffs and the members of the putative Class have been damaged, and are entitled to recover from Defendants their unpaid compensation, interest, reasonable

attorneys' fees, and costs and disbursements of the action.

## NINTH CAUSE OF ACTION
## NEW YORK COMMON LAW - UNJUST ENRICHMENT (Pled in the Alternative)

119.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

120.    Plaintiffs and members of the putative Class have provided a significant amount of services for which they have not been paid.

121.    Upon information and belief, when Defendants entered into the contracts with the patrons regarding gratuities/tips and/or "service charges", they agreed to pay the gratuities/tips and/or "service charges" to Plaintiffs and members of the putative Class.

122.    Upon information and belief, Defendants billed the patrons with whom it contracted for services performed by Plaintiffs and members of the putative class inclusive of gratuities/tips and/or "service charges," which Defendants did not pay to Plaintiffs and members of the putative Class.

123.    As a result, Plaintiffs and members of the putative Class have been damaged, and are entitled to recover from Defendants their unpaid compensation, interest, reasonable attorneys' fees, and costs and disbursements of the action.

## TENTH CAUSE OF ACTION
## NEW YORK COMMON LAW – CONVERSION

124.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

125.    Plaintiffs earned gratuities/tips and/or "service charges" for their work for

Defendants.

126.    These gratuities/tips and/or "service charges" were given by patrons to Plaintiffs and members of the putative Class for their service at Defendants' restaurants.

127.    Defendants confiscated, obtained and maintained exclusive control of the gratuities/tips and/or "service charges" earned by Plaintiffs and members of the putative class throughout their employment with Defendants.

128.    Defendants exercised dominion over identifiable funds belonging to Plaintiffs and members of the putative Class in violation of their rights to those funds.

129.    By denying Plaintiffs and members of the putative Class possession of their gratuities/tips and/or "services charges," Defendants acted with willful and reckless disreguard of Plaintiffs' and members of the putative Class' rights.

130.    As a result, Plaintiffs and members of the putative Class have been damaged, and are entitled to recover from Defendants their unpaid compensation, interest, reasonable attorneys' fees, and costs and disbursements of the action.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b)

and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (3) on behalf of the Class, appointing Plaintiffs and their counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State Law;

d.  An order tolling the statute of limitations;

e.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York common law;

f.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

g.  An award of compensatory damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

i.      An award of damages for the non-payment of spread-of-hour pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

j.      An award of damages arising out of the non-payment of gratuities/tips and/or service charges;

k.      An award of liquidated damages arising out of the non-payment of gratuities/tips and/or service charges;

l.      An award of damages arising out of the failure of Defendants to reimburse Plaintiffs for business expenses;

m.      An award of fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL § 198(1)-b;

n.      An award of prejudgment and post-judgment interest;

o.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

p.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      January 29, 2015

                                PELTON & ASSOCIATES PC

                                By: _Alison Lebbermann_

Brent E. Pelton (BP 1055)
Taylor Graham (TG 9607)
Alison G. Lobban (AL 1020)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative collective
and class*

December 16, 2013
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Rye Golf Club, the City of Rye, R&M Staffing, Scott Yandrasevich and/or their respective owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages, for withholding gratuities earned, and/or for requiring payment of kickbacks, in violation of state and/or federal law.   I authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____  12/16/2013____          Rvin P Reyes_____
     Signature                    Date                           Printed Name

December 5, 2013
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Rye Golf Club, the City of Rye, R&M Staffing, Scott Yandrasevich and/or their respective owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages, for withholding gratuities earned, and/or for requiring payment of kickbacks, in violation of state and/or federal law. I authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____     12 / 5 /13     _____
    Signature              Date                    Printed Name

December 13, 2013
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Rye Golf Club, the City of Rye, R&M Staffing, Scott Yandrasevich and/or their respective owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages, for withholding gratuities earned, and/or for requiring payment of kickbacks, in violation of state and/or federal law. I authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_Edison Aguirre 12/13/13_
Signature         Date

_Edison Aguirre_
Printed Name

December 13, 2013
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Rye Golf Club, the City of Rye, R&M Staffing, Scott Yandrasevich and/or their respective owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages, for withholding gratuities earned, and/or for requiring payment of kickbacks, in violation of state and/or federal law. I authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____   12 | 13 | 2013
Signature                 Date

BENIGNO PERALTA JR.
Printed Name

December 14, 2013
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Rye Golf Club, the City of Rye, R&M Staffing, Scott Yandrasevich and/or their respective owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages, for withholding gratuities earned, and/or for requiring payment of kickbacks, in violation of state and/or federal law. I authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____   12-14-2013          GERRY ROXAS
Signature          Date                   Printed Name

December 16, 2013
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Rye Golf Club, the City of Rye, R&M Staffing, Scott Yandrasevich and/or their respective owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages, for withholding gratuities earned, and/or for requiring payment of kickbacks, in violation of state and/or federal law. I authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____          12-16-2013____                    Aries Beltran Bayaborda_____
        Signature                                Date                                           Printed Name

December 16, 2013
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Rye Golf Club, the City of Rye, R&M Staffing, Scott Yandrasevich and/or their respective owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages, for withholding gratuities earned, and/or for requiring payment of kickbacks, in violation of state and/or federal law. I authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____    12/16/13          BENCHER MONTEBON
Signature                   Date                 Printed Name

December 16, 2013
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Rye Golf Club, the City of Rye, R&M Staffing, Scott Yandrasevich and/or their respective owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages, for withholding gratuities earned, and/or for requiring payment of kickbacks, in violation of state and/or federal law.  I authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____          12/16/2013          Arniel Gomez
Signature                                          Date                    Printed Name

December 13, 2013
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Rye Golf Club, the City of Rye, R&M Staffing, Scott Yandrasevich and/or their respective owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay minimum and overtime wages, for withholding gratuities earned, and/or for requiring payment of kickbacks, in violation of state and/or federal law. I authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_Sheridame Garcia_     12/17/13.          _Sheridame Garcia_
Signature              Date                      Printed Name