UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————

RVIN REYES et al., on behalf of himself
and all others similarly situated,

                Plaintiffs,

      v.

CITY OF RYE; RYE GOLF CLUB;
RM STAFFING & EVENTS, INC.; MORRIS
YACHT & BEACH CLUB, INC.; and
SCOTT YANDRASEVICH, jointly and
severally,

                Defendants.

————————————————————

Civ. No. 13-cv-09051

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RULE 23 CLASS CERTIFICATION**

**HARRIS BEACH PLLC**

Darius P. Chafizadeh
*Attorneys for the Defendants City
  Of Rye and Rye Golf Club*
445 Hamilton Avenue
Suite 1206
White Plains, New York  10106
(914) 393-6802
(212) 687-0659 (fax)
dchafizadeh@harrisbeach.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

APPLICABLE STANDARDS FOR RULE 23 CLASS CERTIFICATION .................................. 2

ARGUMENT ....................................................................................................... 5

POINT I       THE PLAINTIFFS' MOTION FOR RULE 23 CERTIFICATION
              OF THEIR STATE-LAW CLAIMS SHOULD BE DENIED
              BECAUSE THE CITY DEFENDANTS ARE EXEMPT FROM
              THE STATE STATUTES PURSUANT TO WHICH THE
              PLAINTIFFS' CLAIMS ARE BROUGHT..............................................5

POINT II      THE PLAINTIFFS' MOTION FOR RULE 23 CERTIFICATION
              OF THEIR COMMON-LAW CLAIMS SHOULD BE DENIED
              BECAUSE THESE CLAIMS ARE AN ATTEMPT TO
              CIRCUMVENT THE STATUTORY EXEMPTIONS GIVEN TO
              THE CITY DEFENDANTS BY THE STATE LEGISLATURE ..........................9

POINT III     THE PLAINTIFFS' MOTION FOR RULE 23 CLASS
              CERTIFICATION OF THEIR BREACH OF CONTRACT
              CLAIM SHOULD BE DENIED AS FUTILE, BECAUSE THE
              PLAINTIFFS MAY NOT ASSERT THIRD-PARTY
              BENEFICIARY STATUS TO ANY CONTRACTS BETWEEN
              THE CITY DEFENDANTS AND RGC PATRONS ...........................................12

POINT IV      THE PLAINTIFFS' MOTION FOR RULE 23 CLASS
              CERTIFICATION OF THEIR BREACH OF CONTRACT AND
              UNJUST ENRICHMENT CLAIMS SHOULD BE DENIED AS
              FUTILE, BECAUSE ANY DEPRIVATION OF TIP OR
              GRATUITY COMPENSATION WAS THE RESULT OF AN
              INTENTIONAL THIRD-PARTY ACT, AND BECAUSE THE
              CITY DEFENDANTS WERE NOT ENRICHED THEREBY ...........................15

POINT V       THE PLAINTIFFS' MOTION FOR RULE 23 CLASS
              CERTIFICATION OF THEIR CLAIM FOR CONVERSION
              SHOULD BE DENIED BECAUSE THE SPECIFIC MONEY
              SOUGHT TO BE RECOVERED BY THE PLAINTIFFS IS NOT
              IDENTIFIABLE ................................................................................19

CONCLUSION.................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Ali v. New York City Health and Hospitals Corp.,
2013 WL 1195794 (S.D.N.Y. Mar. 25, 2013) .................................................................... 6, 7

Alicea v. City of New York,
145 A.D.2d 315 (1st Dep't 1998) ...................................................................................... 13, 14

Anesthesia Associates of Mount Kisco, LLP
v. Northern Westchester Hosp. Ctr.,
59 A.D.3d 473 (2d Dep't 2009) ............................................................................................ 17

Augustin v. Jablonsky (In Re Nassau County Strip Search Cases),
461 F.3d 219 (2d Cir. 2006) ................................................................................................... 3

Bacchus v. City of New York,
134 A.D.2d 393 (2d Dep't 1987) ........................................................................................... 10

Baratta v. Kozlowski, 94 A.D.2d 454 (2d Dep't 1983) ........................................................... 17, 18

Basco v. Wal-Mart Stores, Inc.,
2004 WL 1497709 (E.D.La. July 2, 2004) ............................................................................. 4

Botello v. COI Telecom, LLC,
2010 WL 5464824 (W.D.Tex. Dec. 30, 2010) ................................................................... 3, 4, 8

Chen v. Oceanica Chinese Restaurant,
2014 WL 1338315 (E.D.N.Y. Apr. 2, 2014) ........................................................................ 2, 3

Cromwell v. New York City Health and Hospitals Corp.,
983 F.Supp.2d 269 (S.D.N.Y. 2013) ................................................................................... 6, 7

Cruz v. TD Bank, N.A.,
855 F.Supp.2d 157 (S.D.N.Y. 2012) ..................................................................................... 11

D'Antonio v. Metropolitan Transportation Authority,
2008 WL 582354 (S.D.N.Y. Mar. 4, 2008) .......................................................................... 5, 6

Dunn v. City University of New York,
2012 WL 5511607 (S.D.N.Y. Nov. 14, 2012) ......................................................................... 6

Edwards v. Prime, Inc., 602 F.3d 1276 (11th Cir. 2010) ............................................................ 20

Elliott v. Leatherstocking Corp.,
    2011 WL 1431618 (N.D.N.Y. Apr. 14, 2011).............................................................. 19, 20

Espinoza v. 953 Associates, LLC,
    280 F.R.D. 113 (S.D.N.Y. 2011) ................................................................................... 3

Fiorenti v. Central Emergency Physicians, PLLC,
    305 A.D.2d 453 (2d Dep't 2003) ................................................................................ 20

Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,
    66 N.Y.2d 38 (1985) ................................................................................................ 12, 13

G.D. Searle & Co. v. Mediocore Communications, Inc.,
    843 F.Supp. 895 (S.D.N.Y. 1994) .............................................................................. 19

Gibson v. NCRC, Inc.,
    2011 WL 2837506 (S.D.Tex. July 18, 2011)........................................................ 3, 4, 8

In Re Regional Building Systems, Inc.,
    320 F.3d 482 (4th Cir. 2003) .................................................................................. 15, 16

Johnson v. Wave Comm GR LLC,
    2011 WL 10945630 (N.D.N.Y. Oct. 4, 2011) ............................................................ 3

Katt v. City of New York,
    151 F.Supp.2d 313 (S.D.N.Y. 2001) ......................................................................... 10

Mark G. v. Sabol, 93 N.Y.2d 710 (1999) ......................................................................... 11

Miglino v. Bally Total Fitness of Greater New York, Inc.,
    92 A.D.3d 148 (2d Dep't 2011).................................................................................. 10

Muhlrad v. Mitchell, Civ. No. 96-cv-03568;
    1997 WL 182614 (S.D.N.Y. Apr. 14, 1997) ............................................................ 13

Murchison v. State, 97 A.D.3d 1014 (3d Dep't 2012)....................................................... 10

Mutuel Ticket Agents, Local 23293 v. Roosevelt Raceway Assoc.,
    172 A.D.2d 595 (2d Dep't 1991)................................................................................ 13

Nakahata v. New York-Presbyterian Healthcare System, Inc.,
    2012 WL 3886555 (S.D.N.Y. Sep. 6, 2012)......................................................... 5, 6, 7

National Market Share v. Sterling National Bank,
    392 F.3d 520 (2d Cir. 2004) ........................................................................... 15, 16, 17

Roach v. T.L. Cannon Corp.,
   2013 WL 1316397 (N.D.N.Y. Mar. 3, 2013) ........................................ 2

Robertson v. Wells, 95 A.D.3d 862 (2d Dep't 2012) ................................. 17

State of New York v. Cities Serv. Co.,
   180 A.D.2d 940 (3d Dep't 1992) ....................................................... 10

Stephen Pevner, Inc. v. Ensler,
   309 A.D.2d 722 (1st Dep't 2003) ...................................................... 17

Stevens v. City of New York,
   2012 WL 5862659 (S.D.N.Y. Nov. 14, 2012) .................................... 10

Thyroff v. Nationwide Mutual Ins. Co.,
   460 F.3d 400 (2d Cir. 2006) ............................................................. 19

Wal-Mart Stores, Inc. v. Visa USA Inc.,
   280 F.3d 124 (2d Cir. 2001) ............................................................... 3

Westport Marina, Inc. v. Boulay,
   783 F.Supp.2d 344 (E.D.N.Y. 2010) ................................................. 12

**Statutes**

29 U.S.C. § 201 ..................................................................................... 2

N.Y. CPLR 5519(1) ............................................................................. 10

N.Y. EDUC. LAW § 3813 ......................................................................... 9

N.Y. GEN. MUNI. LAW § 50-e ................................................................. 9

N.Y. LAB. LAW § 190 ................................................................. 5, 7, 10

N.Y. LAB. LAW § 190(3) ................................................................... 5, 9

N.Y. LAB. LAW § 191 ............................................................................ 6

N.Y. LAB. LAW § 650 ................................................................. 5, 7, 10

N.Y. LAB. LAW § 651(5) ................................................................... 6, 9

N.Y. LAB. LAW § 655 ............................................................................ 6

## Rules

FED.R.CIV.PROC. 23 ............................................................................................ 2

FED.R.CIV.PROC. 23(a) ...................................................................................... 2

FED.R.CIV.PROC. 23(b) ...................................................................................... 2

FED.R.CIV.PROC. 23(b)(3) ................................................................................. 2

## Regulations

12 NYCRR § 142-3.12(b)..................................................................................... 9

12 NYCRR § 142-2.14(b)..................................................................................... 9

12 NYCRR Parts 141-143 ................................................................................... 6

12 NYCRR Part 146 ............................................................................................ 6

## PRELIMINARY STATEMENT

The Defendants, the City of Rye (the "City") and the City-owned Rye Golf Club ("RGC" or, collectively with the City, the "City Defendants"), by and through their attorneys, hereby submit this Memorandum of Law in opposition to the Plaintiffs' motion for Rule 23 class certification of a series of state-law and common-law claims relating to alleged wage-and-hour violations stemming from the Plaintiffs' work at RGC. The complete facts and circumstances underlying the City Defendants' opposition are set forth in the Affidavit of Joseph Fazzino, sworn to on or about November 2, 2015, and the exhibits and papers annexed thereto; and in the interest of brevity are not recited at length here (the "Fazzino Aff.").

In brief, the City Defendants contend that the Plaintiffs should be denied Rule 23 class certification with respect to their state-law and common-law claims because any such certification would ultimately be <u>futile</u>.[1] Certification is futile because the City Defendants are municipal entities <u>exempt</u> from the statutory wage-and-hour provisions pursuant to which the Plaintiffs bring these claims, and because the City Defendants' statutory exemption demonstrates a legislative intent to pre-empt the Plaintiffs' attempt to invoke alternative common-law remedies, the Court is respectfully urged to deny the Plaintiffs' motion (and dismiss all non-federal claims). Furthermore, the City did not benefit or retain and tips/wages allegedly due Plaintiffs. To the contrary, as set forth in the Fazzino Affidavit, the City and the RGC were duped by Defendants RM Staffing, Inc. ("RM Staffing") and Scott Yandrasevich ("Mr. Yandrasevich") who apparently billed the City for wages and sometimes tips and pocketed

---

[1]     To the extent that the Court deems it appropriate to deny Rule 23 class certification of the Plaintiffs' state- and common-law claims on the basis of futility as a matter of law, as is urged here, the Court is respectfully invited to further consider the City Defendants' papers as a motion to dismiss those same claims and/or for summary judgment. Defendants will be submitting a pre-motion letter to file a motion for summary judgment on the claims asserted in accordance with your Honor's Individual Practices.

excess wages and tips.  See Fazzino Aff. at ¶¶13-17.    Accordingly, not only do Plaintiffs' statutory claims fail as a matter of law, their equitable and breach of contract claims (third party beneficiary) also fail as a matter of law making Plaintiffs' Rule 23 motion futile.  Indeed, the City did not in any way retain any tips not paid to Plaintiffs; rather, Mr. Yandrasevich apparently pocketed monies paid by the City for tips and excess wages that were intended for Plaintiffs.

### APPLICABLE STANDARDS FOR RULE 23 CLASS CERTIFICATION

Unlike conditional certification for purposes of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*., the certification of a class under Federal Rule of Civil Procedure 23 operates by a more stringent standard than simply demonstrating that the putative plaintiffs are "similarly-situated."  See Chen v. Oceanica Chinese Restaurant, 2014 WL 1338315, at *3 (E.D.N.Y. Apr. 2, 2014) (granting conditional certification of plaintiffs' FLSA claims but denying certification of a class pursuant to Rule 23); see also Roach v. T.L. Cannon Corp., 2013 WL 1316397, at **7-8 (N.D.N.Y. Mar. 3, 2013) (Rule 23 certification requires "rigorous analysis").  As the Plaintiffs correctly observe, this Rule 23 analysis requires that a proposed class meet four basic requirements: numerosity, commonality, typicality, and adequacy:

> (1) the class is so numerous that joinders of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Roach, 2013 WL 1316397 at *7; see also FED.R.CIV.PROC. 23(a).  In addition to these four factors, the Plaintiffs must also prove that they meet one of the three circumstances set forth in Rule 23(b).  In the case of wage and hour actions, the circumstance always invoked is the one set forth in Rule 23(b)(3): that is, that "the court finds that the questions or law or fact common to class members predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The Rule 23(b) requirement is aimed at establishing that "the case is subject to generalized proof applicable to the class as a whole….[and] that the issues subject to generalized proof outweigh those issues that are subject to individualized proof." Espinoza v. 953 Associates, LLC, 280 F.R.D. 113, 125 (S.D.N.Y. 2011) (citing Wal-Mart Stores, Inc. v. Visa USA Inc., 280 F.3d 124, 136 (2d Cir. 2001) and Augustin v. Jablonsky (In Re Nassau County Strip Search Cases), 461 F.3d 219, 227-28 (2d Cir. 2006)).

Notably, the stringency of the Rule 23 certification analysis also requires that—unlike on motion for conditional certification under the FLSA—when necessary, a district court must "resolve relevant factual disputes, even if they overlap with issues that go to the merits of the claims." Johnson v. Wave Comm GR LLC, 2011 WL 10945630, at *4 (N.D.N.Y. Oct. 4, 2011); see also Chen, 2014 WL 1338315, at *6 (observing that the court's analysis for Rule 23 certification often overlaps with the merits of the underlying claims).

Equally notable—for purposes of the instant action—the certification of a class or collective action may be denied on the basis of futility: that is, when the facts underlying the action demonstrate as a matter of law that the proposed class, whether certified or not, could not prevail on its claims. See, e.g., Botello v. COI Telecom, LLC, 2010 WL 5464824, at **5-8 (W.D.Tex. Dec. 30, 2010); see also Gibson v. NCRC, Inc., 2011 WL 2837506, at **7-8 (S.D.Tex. July 18, 2011). In Botello, the certification of a proposed class of plaintiffs under the Employee Retirement Income Security Act ("ERISA") was denied where the defendants were able to demonstrate as a matter of law that, even if the plaintiffs were their "employees" under

common-law theory of employment, they had no legal entitlement to the defendants' benefit plans. Botello, 2010 WL 5464824 at **5-8.

Similarly, in Gibson, the district court certified an FLSA collective based on one of the representative plaintiff's claims (for unpaid overtime), but declined to do so with respect to a separate minimum-wage claim, because it was not apparent that the plaintiff would actually be able to make out a claim under this theory. Gibson, 2011 WL 2837506 at **7-8. "[C]ourts hesitate to order conditional certification…when doing so would be 'an exercise in futility'." Id. at *8 (quoting Basco v. Wal-Mart Stores, Inc., 2004 WL 1497709, at *5 (E.D.La. July 2, 2004)). Notably, Gibson was decided under the relatively relaxed conditional certification standard of the FLSA, not the more stringent standard of Rule 23 certification.

In the instant case, the Plaintiffs' motion for certification must be rejected because—as in Botello and Gibson, above, there exist indisputable factual circumstances which would, with or without certification,[2] prohibit the Plaintiffs' from recovering on any of their state-law or common-law claims against the City Defendants.  Specifically, the City Defendants are as a matter of law expressly exempted from the coverage of the statutes upon which the Plaintiffs premise their state-law claims; and—to the extent that they constitute an "end-run" around these

---

[2] Even in the absence of the "futility" arguments advanced below, infra, there is no indication in this case that the Plaintiffs could meet the Rule 23(b)(3) requirement—viz., the existence of common questions of fact—because some of the Plaintiffs' claims appear to stem not from work performed for the City Defendants, but for the wholly-unrelated Morris Yacht & Beach Club, Inc.  See Pl. Second Amended Compl. at ¶¶1, 34, 51, and 53 (describing work alleged billed for or performed at Morris Yacht & Beach Club, and billed by RM Staffing).  The Plaintiffs' motion for certification of a Rule 23 class ignores the fact that each individual Plaintiff's claims against the City Defendants will have to be distinguished from his or her claims against Morris Yacht & Beach Club: in other words, the Plaintiffs' motion is attempting to consolidate at least two distinct Plaintiff classes (those claiming wage violations by the City Defendants; and those claiming wage violations by Morris Yacht & Beach Club).  Indeed it may well be the case that some of the Plaintiffs worked exclusively for Morris Yacht & Beach Club, and performed no work for the City Defendants, in which case their inclusion in the class as proposed would be improper.

express exemptions by bringing alternative common-law claims—the Plaintiffs' common-law claims are abrogated by the existence of state wage-and-hour provisions. As a result, the Court must deny the Plaintiffs' motion for Rule 23 certification with respect to any and all non-Federal claims in this action.

## ARGUMENT

### POINT I

**THE PLAINTIFFS' MOTION FOR RULE 23 CERTIFICATION OF THEIR STATE-LAW CLAIMS SHOULD BE DENIED BECAUSE THE CITY DEFENDANTS ARE EXEMPT FROM THE STATE STATUTES PURSUANT TO WHICH THE PLAINTIFFS' CLAIMS ARE BROUGHT.**

The Plaintiffs bring their state-law claims under Article 6 of the New York Labor Law ("NYLL"), N.Y. Lab. Law. §190 *et seq.*, and a series of wage orders issued pursuant to the New York Minimum Wage Act ("NYMWA"), N.Y. Lab. Law §650 *et seq.* Because both of these statutes expressly exempt government agencies from their application, and because the City Defendants, as municipal entities, constitute "government agencies" within the meaning of these statutes, the certification of any Rule 23 class based on the Plaintiffs' state statutory claims must be denied as futile.

Article 6 of the NYLL, governing "Payment of Wages," contains an express exemption for "governmental agenc[ies]" from the definition of "employer," for purposes of the statute's application. N.Y. LAB. LAW §190(3); see also D'Antonio v. Metropolitan Transportation Authority, 2008 WL 582354, at *5 (S.D.N.Y. Mar. 4, 2008); see also Nakahata v. New York-Presbyterian Healthcare System, Inc., 2012 WL 3886555, at **13-14 (S.D.N.Y. Sep. 6, 2012). In D'Antonio, the district court dismissed claims brought against city- and metropolitan-public transit organizations under Article 6's wage-deductions provision, observing that both entities were "governmental agencies" (one an agency of the state; another an agency of the City of New

York) and therefore exempt from the law. D'Antonio, 2008 WL 582354, at *5; see also Dunn v. City University of New York, 2012 WL 5511607, at *3 (S.D.N.Y. Nov. 14, 2012) (dismissing a claim against the City University of New York under Labor Law §191 for failure to pay wages, because the University was "a government agency...exempt from the requirements of Labor Law §191"). In Nakahata, the district court extended the same protection to the Westchester County Health Care Corporation, a public-benefits corporation created by—but separate from—the state, as a vehicle for delivering health-care services to Westchester County residents. Nakahata, 2012 WL 3886555, at **13-14.

Likewise, the NYMWA contains an express exemption from its provisions—and, by extension, the provisions of its implementing minimum wage orders—by reading out of its provisions any individuals "employed or permitted to work...by a federal state or municipal government or political subdivision thereof." N.Y. LAB. LAW §651(5) and 655 (defining "employee" under the NYMWA and empowering the wage board to promulgate minimum-wage regulations, respectively); see also 12 NYCRR Parts 141-143 and 146. As a result, in Ali v. New York City Health and Hospitals Corp., where the plaintiff sought to bring FLSA and NYMWA claims against a public benefit corporation for allegedly unpaid wages and overtime, the district court dismissed the NYLL-based claims based on its assessment that the corporation was a public subdivision of the state and/or New York City, and therefore exempt altogether from the statute. Ali v. New York City Health and Hospitals Corp., 2013 WL 1195794, at *2 (S.D.N.Y. Mar. 25, 2013); see also Cromwell v. New York City Health and Hospitals Corp., 983 F.Supp.2d 269 (S.D.N.Y. 2013) (reaching same conclusion). The Cromwell court noted—in an observation that goes to one of the motives behind the exemption—that the imposition of the NYLL's

liquidated-damages provision against a governmental entity would ultimately simply redound on the public by "fall[ing] on the blameless taxpayer." Cromwell, 983 F.Supp.2d at 275.

In view of the statutory and case authority set forth above it cannot realistically be contended that the City Defendants are liable under Article 6 and/or the NYMWA for the Plaintiffs' claims. The Plaintiffs openly concede the City's municipal status; and the City's complete ownership of the RGC and its restaurant and events venues. Pl. MOL at 4. Those facts alone should render the entities' immunity from these wage and hour claims.

To the extent that the Plaintiffs contest the status of the RGC, however, the pertinent facts about its existence and management put the question of its municipal-exemption to rest. The RGC has no independent corporate or other institutional status aside from complete ownership by the City. Fazzino Aff. at ¶12. (In this regard, indeed, it is institutionally even closer to its municipal controller than the public benefits corporations in Nakahata and Ali, because those institutions at least enjoyed an independent corporate existence.) Although much of its funding derives from membership dues and other user fees—much as a city or county park might rely on visitors' daily or seasonal admission fees to fund its operations—the RGC's budget is prepared annually by the City Comptroller and City Manager who are also responsible for reviewing and purchase orders and invoices generated by or on behalf of the RGC. Id. at ¶¶8-11. The RGC's ranking personnel—including its General Manager and accounting personnel are indisputably City employees. Id. at ¶¶8-11. Indeed, the RGC's General Manager is directly subordinate to the City Manager and is regarded as a department head. Id. at ¶11. The City Council and the City's Finance Department also have oversight responsibilities relating to the RGC. Id. at ¶¶8-11. When the RGC and its General Manager's relationship with co-Defendant RM Staffing became a focus of attention (in part because the City's internal auditors include RGC operations

within the scope of their annual reviews of City financial matters), the City initiated an investigation of the matter pursuant to its own City Charter. Id. at ¶18.

What all of the above makes clear, is that the RGC's existence and identity cannot be divorced from the City itself; and consequently must enjoy the very same municipal immunity that the City does from the wage-and-hour claims now brought by the Plaintiffs pursuant to state law. The Plaintiffs gloss over this issue in their motion for certification, focusing instead—to the extent they discuss the RGC's operations—on the "hospitality"-style nature of the RGC's restaurant and bar operations. This focus, however, does not render the RGC or its operations non-municipal for the purposes of the instant lawsuit. To the contrary, the RGC's food- and beverage-service operations are simply an extension of one of the governmental functions of the City itself—providing a venue for public recreation and relaxation—and are fundamentally no different from a government-operated employee and visitor cafeteria in a government office building; or a publicly-operated gift shop at the visitor center of a state park. As a consequence, the Plaintiffs will be unsuccessful in prosecuting their state-law claims against either the City and/or the RGC; and their motion for Rule 23 class certification as to those claims should accordingly be denied as futile, as courts denied certification on similar bases in Botello and Gibson (discussed above, supra).  Botello, 2010 WL 5464824 at **5-8; Gibson, 2011 WL 2837506 at **7-8.

## POINT II

**THE PLAINTIFFS' MOTION FOR RULE 23 CERTIFICATION OF THEIR COMMON-LAW CLAIMS SHOULD BE DENIED BECAUSE THESE CLAIMS ARE AN ATTEMPT TO CIRCUMVENT THE STATUTORY EXEMPTIONS GIVEN TO THE CITY DEFENDANTS BY THE STATE LEGISLATURE.**

The Plaintiffs also seek to certify a Rule 23 class with respect to a series of common-law claims including third-party beneficiary breach of contract claims; unjust enrichment; conversion; and *quantum meruit*. Because these common-law claims amount to an "end run" around the statutory protection against wage claims given by the legislature to government employers, and would defeat the purpose of the above-described statutory exemptions, certification of a class around these claims should also be denied. Further, these claims also fail as a matter of law.

The state statutes pursuant to which the Plaintiffs bring their wage-and-hour claims clearly illustrate a legislative intent to protect government employers from such claims: see, e.g., N.Y. LAB. LAW §§190(3) and 651(5); see also 12 NYCRR §§142-2.14(b) and 142-3.12(b) (only minimum-wage orders to define "employee," both specifically reiterating that the term "does not include any individual employed by a Federal, State or municipal government or political subdivision thereof"). The intention of the legislature to use these statutory exemptions to shield government entities from wage claims, is consistent with the existence of a more general legislative policy to protect government entities from excessive liability. This policy is readily apparent when viewed in the context of the myriad ways in which the law has placed limitations on the potential liability of state, local and municipal governments, or otherwise been interpreted in a manner that affords their assets special safeguards: see, e.g., N.Y. GEN. MUNI. LAW §50-e and N.Y. EDUC. LAW §3813 (imposing notice-of-claim requirements with respect to claims

asserted against government entities); Bacchus v. City of New York, 134 A.D.2d 393 (2d Dep't 1987) (purpose of notice-of-claim requirements is to protect public corporations); Stevens v. City of New York, 2012 WL 5862659, at *3 (S.D.N.Y. Nov. 14, 2012) (notice-of-claim requirements are strictly construed); see also Murchison v. State, 97 A.D.3d 1014, 1015-16 (3d Dep't 2012) (applying doctrine of governmental immunity to dismiss claim against New York State); Katt v. City of New York, 151 F.Supp.2d 313 (S.D.N.Y. 2001) (holding municipal entity immune from punitive damages under the New York City Human Rights Law); and N.Y. CPLR 5519(1) (automatically staying enforcement of judgments and orders against the state or its political subdivisions, without an undertaking, when appealed from).  All of the foregoing are evidence of an intent to afford protection to municipal entities that is not otherwise available to other, potentially-liable parties.

The extension of the legislatively-endowed protection against wage claims to common-law theories of recovery, is not only consistent with the general policy of municipal protection described above, but with the notion that statutory interpretation should not be done in a way that ultimately defeats a statute's underlying purpose: see, e.g., Miglino v. Bally Total Fitness of Greater New York, Inc., 92 A.D.3d 148, 156-57 (2d Dep't 2011) (cautioning that "strict construction should not be used to eviscerate the very purpose for which the legislation was enacted") (citing State of New York v. Cities Serv. Co., 180 A.D.2d 940, 942 (3d Dep't 1992)). In this case, certification of the Plaintiffs' common-law claims—notably, absent from the Plaintiffs' original Complaint and only brought by way of amendment—would completely undermine the legislative intent behind exempting the City Defendants from the application of Article 6 and the NYMWA: effectively letting the Plaintiffs "end-run" the Legislature by re-packaging their non-viable statutory claims in a common-law disguise.  See Cruz v. TD Bank,

N.A., 855 F.Supp.2d 157 (S.D.N.Y. 2012) (where cause of action was unavailable under statute, plaintiffs' identical common-law claims would be dismissed) (citing Mark G. v. Sabol, 93 N.Y.2d 710, 726 (1999)).   This would disembowel a series of statutory provisions aimed *squarely* at protecting government entities from claims of this nature, as well as do damage to a more general policy of limiting the extent and bases of liability that may be imposed upon government entities—whose liabilities are, after all, ultimately footed by the public in the form of taxation and fees.  The Plaintiffs' attempt to evade clear statutory exemptions on municipal entities by resorting to common-law analogues should be denied; and—since this would render any common-law Rule 23 class certification moot—their instant motion for certification should be denied as well, on the ground of futility.

## POINT III

**THE PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION OF THEIR BREACH OF CONTRACT CLAIM SHOULD BE DENIED AS FUTILE, BECAUSE THE PLAINTIFFS MAY NOT ASSERT THIRD-PARTY BENEFICIARY STATUS TO ANY CONTRACTS BETWEEN THE CITY DEFENDANTS AND RGC PATRONS.**

The Plaintiffs assert with respect to their breach of contract claims—for which they seek Rule 23 class certification—that they were intended third-party beneficiaries of "contracts" made between the City Defendants and the patrons of the RGC to pay tip, gratuity, and "service charge" compensation to the Plaintiffs in connection with services allegedly rendered.  Because the Plaintiffs could not have been intended third-party beneficiaries of any such "contracts" as a matter of law, however, certification of a class around this claim must be denied.

Despite the Plaintiffs' cursory allegation that they were "intended beneficiaries" of agreements between RGC patrons and the City Defendants to pay for food and beverages services rendered to them, New York case authority on the matter makes plain that they were "incidental," as opposed to an "intentional," beneficiaries—and therefore lack standing to sue on any alleged breach by the City Defendants.  "New York has adopted the reasoning and terminology of the Restatements (Second) of Contracts with regard to whether a third-party beneficiary has enforceable rights under the contract in question....[I]ntended third-party beneficiaries do have such rights, whereas incidental third-party beneficiaries do not."  Westport Marina, Inc. v. Boulay, 783 F.Supp.2d 344, 349-50 (E.D.N.Y. 2010) (finding that distributors could not sue as third-party beneficiaries to contract between wholesale distributor and designer of defective boat-coating product, notwithstanding their allegations that the wholesale distributor "intended" to benefit them) (internal citations omitted) (citing Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 44-45 (1985)).

12

The intent of the contracting parties to specifically benefit a third party is derived first from the contractual language itself, along with—if appropriate—examining the "surrounding circumstances" of the contract.  Muhlrad v. Mitchell, Civ. No. 96-cv-03568; 1997 WL 182614, at **5-6 (S.D.N.Y. Apr. 14, 1997) (citing Alicea v. City of New York, 145 A.D.2d 315, 317-18 (1st Dep't 1998)).  Typically, the intention to benefit a third party is associated with either: (1) an express contractual provision permitting the third-party beneficiary to sue for enforcement of the contract; or else (2) circumstances in which no one other than the third party can recover if the contract is breached by the promisor.  Muhlrad, 1997 WL 182614, at **5-6 (citing Fourth Ocean Putnam Corp., 66 N.Y.2d at 44-45).  New York courts have found, however, that these circumstances do not exist in cases featuring employees whose only benefit was the jobs or wages created by "contracts" between their employers and other entities, because absent some contract language to the contrary, those jobs and wages were merely incidental benefits.  See Mutuel Ticket Agents, Local 23293 v. Roosevelt Raceway Assoc., 172 A.D.2d 595, 596-97 (2d Dep't 1991); Alicea, 145 A.D.2d at 317-18.  In Mutuel Ticket Agents, the court rejected the idea that a union representing ticket agents at a racetrack (although an incidental beneficiary) had standing to sue over the shutdown of the track.  In Alicea, the First Department reached the same conclusion with regard to a group of plaintiffs who were formerly employed by a company that contracted with New York City to maintain City parking meters, observing that the plaintiffs were not signatories to the contract between the City and their employer; were not specifically referenced in the contract as intended third-party beneficiaries; were not expressly given enforcement rights by the contract; and the contract explicitly gave the former employer a right to recover for breach.  Alicea, 145 A.D.2d at 317-18.

The same circumstances dictate here that the Plaintiffs cannot, as a matter of law, be intended third-party beneficiaries to any "contracts" created by the exchange of bills and receipts between the City Defendants and restaurant, catering facility, or bar patrons; and consequently cannot have standing to sue for any alleged breach of that contract. As in Alicea, the Plaintiffs enjoyed some benefits of employment (tip-, gratuity-, or "service charge"-based compensation) as the result of agreements by patrons to pay for their food and drink; however, those "contracts" were not made with any express or implicit intention of benefitting the Plaintiffs. They were made, rather, with the intention of obtaining food and beverages, and rendering payment for those goods. The Plaintiffs point to nothing in the exchange between the patrons and City Defendants that clearly marked the Plaintiffs generally—much less any specific Plaintiff, given that the RGC's operations contemplate the "pooling" of tips—as intended third-party beneficiaries, or otherwise gave them a right to sue or a right of recovery in the event of breach. To the contrary, the City Defendants would have been the proper parties to assert claims against patrons who failed to perform by paying for the goods and services provided to them. In short, the Plaintiffs' claims for breach of contract are untenable at law; and, along with the rest of their claims, should be denied Rule 23 class certification and accordingly dismissed.

## POINT IV

**THE PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION OF THEIR BREACH OF CONTRACT AND UNJUST ENRICHMENT CLAIMS SHOULD BE DENIED AS FUTILE, BECAUSE ANY DEPRIVATION OF TIP OR GRATUITY COMPENSATION WAS THE RESULT OF AN INTENTIONAL THIRD-PARTY ACT, AND BECAUSE THE CITY DEFENDANTS WERE NOT ENRICHED THEREBY.**

Even if the Plaintiffs were capable of stating breach of contract claims based on an asserted status as "intended beneficiaries" of contracts between the City Defendants and RGC patrons, their motion for Rule 23 certification of a class based on their contract claims must fail. Because the tip, gratuity, and "service charge" compensation claimed by the Plaintiffs in connection with their breach-of-contract claims was stolen by a third party, thereby causing the alleged "breach," and because no liability can be imputed to the City Defendants as a result, any certification of a class premised on the Plaintiffs' contract claims should be denied as futile. Likewise, because as a matter of law the City Defendants were never "enriched" by RM Staffing and Mr. Yandrasevich's theft of the tips, gratuities, and "service charges" at issue, the Plaintiffs' effort to certify a class based on claims of unjust enrichment must fail as well, on the ground of futility.

Courts applying New York law have held that where the breach of a contract is the result of a third party's intentional act, and outside the control of the contracting parties, liability cannot be imparted to the "breaching" party: see, e.g., National Market Share v. Sterling National Bank, 392 F.3d 520 (2d Cir. 2004); and In Re Regional Building Systems, Inc., 320 F.3d 482 (4th Cir. 2003) (applying New York law). In National Market Share, the plaintiff, a telemarketing company, brought breach of contract claims against a bank that had failed to fund its account, causing thousands of payroll checks to bounce. National Market Share, 392 F.3d at 524-25. The district court found, however, that the bank's failure to fund the plaintiff's account

was the result of one of the plaintiff's principals diverting a client's check into his own personal account—a check from which the defendant bank had expected to be paid for its backing of the plaintiff's payroll checks. Id. In short, the commission of an intervening act—the third-party theft of money that was intended to be transferred between the parties—meant that the plaintiff's damages were no longer attributable to the defendant bank. The Second Circuit affirmed the district court's holdings. Id. at 526-28. Similarly, in Regional Building Systems—where a contractor failed to deliver housing units to a subcontractor who was tasked with transporting them to their final destination, and the subcontractor subsequently sued for the expenses associated with its idle labor and equipment—the contractor was ultimately held not liable for the breach of its agreement with the subcontractor, because its failure to deliver the housing units stemmed from a default by a third party, completely outside of the contractor's control. Regional Building Systems, 320 F.3d at 485-86.

Viewed in the context of the above case authority, the instant circumstances mean that, as a matter of law, the Plaintiffs could not sustain their breach-of-contract claims or equitable claims (causes of action numbers seven through ten) against the City Defendants. Any "breach" of an agreement to benefit the Plaintiffs by paying them tip, gratuity, and/or "service charge" compensation, was caused not by any action, or inaction, on the part of the City Defendants. To the contrary, the City Defendants made clear that—to the extent of their knowledge—the invoices that they received from RM Staffing covering the cost of the Plaintiffs' compensation, included all of the applicable tip and gratuity-based compensation to which the Plaintiffs were allegedly entitled. Fazzino Aff. at ¶¶15-17. The City Defendants, in other words, paid the staffing company tasked with paying the Plaintiffs, only to have the staffing company, and Mr. Yandrasevich, steal these monies before they could reach the Plaintiffs. Id. at ¶17. The City

Defendants cannot now be held liable for breaching a contract intended to benefit the Plaintiffs, given that they tried to convey all of the money believed owed to the Plaintiffs, and were thwarted by an outside party's deliberate theft.  Under National Market Share, the Plaintiffs would be obligated to look to RM Staffing and/or Mr. Yandrasevich for their damages; and, consequently, an attempt to certify a Rule 23 class as against the City Defendants is untenable and futile as a matter of law.  Class certification should accordingly be denied.

Class certification should also be denied as futile with respect to the Plaintiffs' claims for unjust enrichment, because the record in this case makes clear that the City Defendants were never actually enriched by RM Staffing's and Mr. Yandrasevich's purported failure to pay the Plaintiffs tip, gratuity, and "service charge"-based compensation.  "To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered."  Robertson v. Wells, 95 A.D.3d 862, 864 (2d Dep't 2012) (emphasis added) (quoting Anesthesia Associates of Mount Kisco, LLP v. Northern Westchester Hosp. Ctr., 59 A.D.3d 473, 481 (2d Dep't 2009)).  In keeping with the requirement of "enrichment," where the other party never inures a benefit from the allegedly wrongful transaction, a claim for unjust enrichment cannot endure as a matter of law.  See Baratta v. Kozlowski, 94 A.D.2d 454, 464-65 (2d Dep't 1983); Stephen Pevner, Inc. v. Ensler, 309 A.D.2d 722, 723 (1st Dep't 2003).  In Baratta—where the plaintiff sued a bank defendant for unjust enrichment—the court found that the bank was not "enriched" by the plaintiff's loss, where the plaintiff's money (in the form of bonds that had been invested with the bank) was embezzled by the bank's former president for his own use, so that the bank never benefitted or profited from these actions.  Similar to the Baratta case, the City Defendants here were never "enriched" by

RM Staffing and Mr. Yandrasevich's failure to pay tip and gratuity-based compensation to the Plaintiffs. The City Defendants did not enjoy any supposed benefits from retaining these tip wages because, to the extent they ever collected them in the first place, they did not retain them. Rather, the City Defendants remitted money to RM Staffing and/or Mr. Yandrasevich (in his apparent capacity as a "consultant" for RM Staffing) in response to RM Staffing's invoices, for what the City Defendants believed would be payment to the Plaintiffs (believed, by the City, to include the value of whatever tips and gratuities RM Staffing owed the Plaintiffs). Fazzino Aff. at ¶¶15-17. The fact that the tip wages did not, allegedly, reach the Plaintiffs because they were essentially stolen in transit by the same entity responsible for administering the Plaintiffs' payroll, no more "enriched" the City Defendants, than the Baratta bank defendant was "enriched" by the embezzlement of its president for his own personal uses. As a consequence, the Court is respectfully urged to deny Rule 23 certification of this claim.

## POINT V

### THE PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION OF THEIR CLAIM FOR CONVERSION SHOULD BE DENIED BECAUSE THE SPECIFIC MONEY SOUGHT TO BE RECOVERED BY THE PLAINTIFFS IS NOT IDENTIFIABLE.

The Plaintiffs also seek Rule 23 certification of a class based on their common-law claims for conversion. However, because conversion requires the identification of specific money that is the property of the plaintiff(s), and because the Plaintiffs in this instance are not able to point to any such readily identifiable, distinct fund, their claims for conversion fail as a matter of law and the certification of a class based thereon would be futile. Further, as a matter of law and fact, neither the RGC nor the City converted any monies of Plaintiffs.

"Under New York law, 'conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights'." Elliott v. Leatherstocking Corp., 2011 WL 1431618, at *7 (N.D.N.Y. Apr. 14, 2011) (quoting Thyroff v. Nationwide Mutual Ins. Co., 460 F.3d 400, 403 (2d Cir. 2006)). When the property alleged to have been converted is money, however, it must be specifically identifiable with respect to each plaintiff: "Money can be the subject of conversion and a conversion action only when it can be described, identified, or segregated in the manner that a specific chattel can be, and the mere failure to pay a debt is not a conversion of the money owing." Elliott, 2011 WL 1431618, at *7 (quoting G.D. Searle & Co. v. Mediocore Communications, Inc., 843 F.Supp. 895, 912 (S.D.N.Y. 1994)). Elliott is instructive in the instant case. There the plaintiffs—room attendants, dining room servers and banquet servers at a hotel and resort—sued for the alleged "conversion" of service charges collected by the hotel from guests as gratuities for its staff. Elliott, 2011 WL 1431618, at **1-2. The plaintiffs contended that the hotel did not fully

distribute the service charges it collected among eligible employees. Id. at *7. The district court rejected the conversion claim, holding that

> Here, there can be no conversion claim because Plaintiffs never had title, possession, or control of the gratuities....The monies at issue here were service charges collected directly from the patrons of Defendant's hotel and/or restaurant and then paid out to various of Defendant's employees. There is no plausible allegation that Defendant was obligated to remit specific, identifiable funds to Plaintiffs or to maintain the service charges in a separate account.

Elliott, 2011 WL 1431618, at **7-8 (internal citations omitted) (citing Fiorenti v. Central Emergency Physicians, PLLC, 305 A.D.2d 453, 455 (2d Dep't 2003) (plaintiffs could not recover bonuses allegedly withheld on a conversion theory)); see also Edwards v. Prime, Inc., 602 F.3d 1276 (11th Cir. 2010) (declining to consider conversion claim based on allegedly stolen tips, because the tip money did not represent "specific money capable of identification").

The circumstances here, as in Elliott, render it impossible for the Plaintiffs to sustain a claim for conversion, because the assorted tips, gratuities, and service charges the Plaintiffs claim entitlement to cannot be segregated from the remainder of any other monies that were collected by the RGC, RM Staffing, and/or Mr. Yandrasevich. See Edwards, 602 F.3d at 1304-1305 ("The plaintiffs want their tips returned but it would be implausible to suggest...that [the employer] has those particular tips stored in a bag somewhere, much less segregated in a fashion that would permit matching them up to each individual plaintiff"). The record here makes it clear that the money rendered by the City Defendants to RM Staffing was not delineated by category; it was aggregated and paid out in response to generalized invoices for the Plaintiffs' services and compensation, and the City relied on RM Staffing—as the company tasked with administering payroll—to properly designate and categorize the components of the Plaintiffs' compensation. As such, it cannot as a matter of law form the basis for a conversion claim; and

the Plaintiffs' motion for Rule 23 class certification with regard to this claim must be denied on the basis of futility.

## CONCLUSION

The Plaintiffs' papers devote considerable time and attention to the tests for Rule 23 certification but miss the most important point of all: the existence of statutory and policy arguments precluding the presentation of their state- and common-law claims against the City Defendants at all, whether or not in class form.  The Court is respectfully urged to see the instant motion for what it is: a procedural exercise made moot by the fact that the claims sought to be embodied in a certified class, <u>cannot</u> be prosecuted against municipal defendants, as the City Defendants clearly are.  As a result, the Court is respectfully asked to recognize that as a matter of law, Rule 23 class certification in this circumstance would ultimately be futile, and deny the requested certification in its entirety, together with such other and further relief as the Court may deem just and proper.

Dated: November 2, 2015
      White Plains, New York

**HARRIS BEACH PLLC**

<u>s/ Darius P. Chafizadeh</u>
Darius P. Chafizadeh
*Attorneys for the Defendants City*
  *Of Rye and Rye Golf Club*
445 Hamilton Avenue
Suite 1206
White Plains, New York  10601
(914) 683-1200
(914) 683-1210
<u>dchafizadeh@harrisbeach.com</u>