UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RVIN REYES, ISRAEL CRUZ, EDISON
AGUIRRE, BENIGNO PERALTA JR., GERRY
ROXAS, ARIES BAYABORDA, BENCHER
MONTEBON, ARNIEL GOMEZ and
SHERIDAME GARCIA, Individually And On
Behalf Of All Others Similarly Situated,

                Plaintiffs,

    -against-

CITY OF RYE, RYE GOLF CLUB, RM
STAFFING & EVENTS, INC. and SCOTT
YANDRASEVICH, Jointly and Severally,

                Defendants.

No. 13-cv-9051 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiffs Rvin Reyes, Israel Cortes Cruz, Edison Aguirre, Benigno Peralta, Jr., Gerry

Roxas, Aries Beltran Bayaborda,[1] Bencher Montebon, Arniel Gomez, and Sheridame Garcia

("Named Plaintiffs") have made a Rule 23 motion for class certification of the putative class's

New York Labor Law claims. Plaintiffs seek an order certifying one class of hourly employees

and a related subclass of tip-eligible employees, appointing Named Plaintiffs as class

representatives, appointing Named Plaintiffs' counsel as class counsel, approving the proposed

class notice, directing Defendants to furnish to Plaintiffs the names and contact information of all

members of the defined class, and authorizing notice to be issued to all persons similarly

situated.

    For the following reasons, Plaintiffs' motion is GRANTED.

---

[1] The Court respectfully directs the Clerk to correct the spelling of Mr. Bayaborda's name in the caption.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/28/2016

# BACKGROUND

## I.      Factual Background

Defendant Rye Golf Club is a 126-acre parcel owned and operated by Defendant City of

Rye (the "City"), a municipality located in Westchester County, New York.  (Second Am.

Compl. ("SAC") ¶ 9, ECF No. 95.)[2]  Rye Golf Club contains a number of recreation centers,

including a members-only golf course and a restaurant and catering facility called Whitby Castle

that is open to the public.  (Aff. Joseph S. Fazzino Jr. in Opp'n to Pls. Mot. Class. Cert.

("Fazzino Aff.") ¶ 7, ECF No. 115; SAC ¶¶ 30-31.)  The club operates as an "enterprise fund,"

meaning that the fees and charges (from, for example, membership dues or meals purchased by

patrons) paid by the public for the use of the various facilities are intended to cover all of the

club's operating costs.  (Fazzino Aff. ¶ 9.)  The General Manager of the club from March 2002

until his resignation in January 2013 was Defendant Scott Yandrasevich.  (Fazzino Aff. ¶ 13.)

From 2007 through January 2013, the club's restaurant, catering, and bar facilities were staffed

by employees of Defendant RM Staffing & Events, Inc. ("RM Staffing").  (Fazzino Aff. ¶ 8.)  In

2012 and 2013, the City of Rye investigated the relationship between Yandrasevich and RM

Staffing, eventually concluding they jointly perpetrated a scheme against the City and golf club

to fraudulently bill the City for a significant sum of money.  (Fazzino Aff. ¶ 18.)  Plaintiffs are

current and former restaurant and bar employees of the club.  (SAC ¶¶ 40 (Rvin Reyes), 44

(Israel Cortes Cruz), 47 (Edison Aguirre), 49 (Sheridame Garcia), 51 (Benigno Peralta, Jr.), 53

(Gerry Roxas), 55 (Arniel Gomez), 58 (Aries Beltran Bayaborda), 61 (Bencher Montebon); Decl.

---

[2] For purposes of deciding a Rule 23 motion for class certification, the allegations set forth in the complaint are accepted as true.  *See Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978).

Brent E. Pelton, Esq. in Supp. of Pls. Mot. Class. Cert. ("Pelton Decl."), ECF No. 109, Exs. 3, 4, 5, 6.[3])

On December 23, 2013, the Named Plaintiffs in this putative class action commenced this action on behalf of themselves and all other similarly situated "wait staff, bartenders, bussers/runners, kitchen staff, dishwashers," and all other hourly employees who worked for Defendants since December 20, 2007.  (Compl., ECF No. 1;[4] SAC ¶¶ 2, 15, 18.)  According to Plaintiffs, Defendants[5] failed to pay the required overtime premiums for employees that worked in excess of 40 hours per week; failed to pay the required additional hour's wage when employees worked shifts longer than 10 hours or a split shift, also referred to as "spread-of-hours" wages; required employees to pay their own uniform costs; withheld and confiscated tips, gratuities, and service charges left by patrons; and failed to provide the required wage statements and notices.  (SAC ¶¶ 22, 26.)

Defendants City of Rye and Rye Golf Club ("Golf Club Defendants") respond that during the time period when RM Staffing was providing employees for the club, the City "believed that it was rendering the full amount of these workers' compensation" to RM Staffing, which was in turn providing the compensation—including all owed gratuities—to the employees.  (Fazzino Aff. ¶ 16.)  The Golf Club Defendants further explain that the usual payment flow entailed: the City receiving funds paid to the club and depositing them into a City bank account; RM Staffing providing Yandrasevich with invoices for the employees' compensation; Yandrasevich reviewing and approving the invoices; and then the City releasing payment to RM Staffing for

---

[3] Exhibits 3-6 are Decls. in Supp. of Pls. Mot. for Cond. Class Cert. for Reyes ("Reyes Decl."), Gomez ("Gomez Decl."), Bayaborda ("Bayaborda Decl."), and Montebon ("Montebon Decl."), respectively.
[4] Plaintiffs amended their complaint on May 13, 2014, and again on February 3, 2015.  (ECF Nos. 26 & 95.)  The Second Amended Complaint (SAC) is the operative complaint in this action.
[5] On May 22, 2014, former defendant Morris Yacht and Beach Club, Inc. was voluntarily dismissed from the action without prejudice by stipulation between the parties.  (Stip. of Dismissal, ECF No. 30.)  On September 23, 2014, Plaintiffs sought to declare Defendant RM Staffing in default.  (Req. to Enter Default, ECF No. 63.)

the employees.  (Fazzino Aff. ¶ 15.)  The invoices provided by RM Staffing to Yandrasevich and

the City organized owed compensation by employee, listing hours worked, overtime hours

worked, gratuities earned (until 2009 when hourly rates increased and this field was left blank),

and the hourly rates of compensation.  (Fazzino Aff., Ex. 1.)  Thus, the Golf Club Defendants

blame Defendants Yandrasevich and RM Staffing for any missing wages or compensation and

deny knowledge of any wrongdoing, specifically with regard to improperly withheld tips and

gratuities.  (Fazzino Aff. ¶¶ 17, 21-22.)

## II.    Procedural History

On August 8, 2014, the Court conditionally certified Plaintiffs' Fair Labor Standards Act

("FLSA") claim as a collective action under 29 U.S.C. § 216(b).  (Order, ECF No. 38.)

Discovery in this matter closed on September 22, 2015.  Plaintiffs now move for class

certification of their New York Labor Law ("NYLL") claims.  (Pls. Mot. Class Cert., ECF

No. 108.)  Defendants, rather than contesting class certification per the strictures of Federal Rule

of Civil Procedure 23, urge this Court to reject Plaintiffs' motion as a moot procedural exercise,

arguing class certification of the NYLL claims would be futile as to the Golf Club Defendants

because as a municipality and a city-owned recreational facility they are not "employers" under

the NYLL and, therefore, immune from suit on those claims.  (Defs. Mem. in Opp'n to Pls. Mot.

Class. Cert. ("Defs. Opp'n Mem.") at 1, 5, 21, ECF No. 116.)

## CLASS CERTIFICATION STANDARD

For a matter to proceed as a class action, a plaintiff must satisfy the four prerequisites of

numerosity, commonality, typicality, and adequacy, specifically demonstrating that: "(1) the

class is so numerous that joinder of all members is impracticable; (2) there are questions of law

or fact common to the class; (3) the claims or defenses of the representative parties are typical of

the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "In addition, while Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable class has been implied by the courts. This implied requirement is often referred to as 'ascertainability.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 209 F.R.D. 323, 336 (S.D.N.Y. 2002) (internal quotes and citations omitted). The party seeking class certification bears the burden of satisfying Rule 23's prerequisites by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

In addition to satisfying the Rule 23(a) prerequisites, the plaintiff must qualify the proposed class under one of three subsection Rule 23(b) categories. Fed. R. Civ. P. 23(b); *see also Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Rule 23(b)(3)—the provision under which Plaintiffs move (*see* Pls. Mem. in Supp. of Mot. Class. Cert. ("Pls. Mem.") at 11, 17-24, ECF No. 110)—is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Plaintiffs need not prove, however, that the legal or factual issues that predominate will be answered in their favor. *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1196 (2013).

A certifying court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (citing *In re IPO Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). Although "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the plaintiff's underlying claim,' Rule 23 grants

courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194-95 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).  The court must resolve any factual disputes relevant to satisfying each Rule 23 requirement, but "should not assess any aspect of the merits *unrelated* to a Rule 23 requirement." *In re IPO Secs. Litig.*, 471 F.3d at 41 (emphasis added).  A district court may later decertify a previously certified class if it becomes apparent that the requirements of Rule 23 are, in fact, not met.  *See* Fed. R. Civ. P. 23(c)(1)(C).

After certifying a class, the Court "must define the class and the class claims, issues, or defenses, and must appoint class counsel," considering the work counsel applying for appointment has already done in the action, counsel's relevant experience and knowledge of the applicable law, and the resources that counsel plans to dedicate to the action.  *See* Fed. R. Civ. P. 23(c)(1)(B) & 23(g)(1)(A).  "Class counsel must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).

If a class action is certified under Rule 23(b)(3)—as Plaintiffs' have requested in this action—the court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

## DISCUSSION

This Court has jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.  Although only the claims relating to unpaid overtime wages (Counts I & II of the Second Amended Complaint) relate to both the FLSA and NYLL, the remaining claims alleging violations of the NYLL or New York common law (Counts III – X) arise from a common nucleus of operative facts shared with the Plaintiffs' FLSA claim, namely the compensation

policies and practices of the Defendants.  For this reason, exercise of supplemental jurisdiction over these claims is appropriate.  *Shahriar*, 659 F.3d at 244-45 ("plaintiffs frequently bring [FLSA and NYLL] claims together in a single action using the procedural mechanisms available under . . . Rule 23 to pursue the NYLL claims as a class action under the district court's supplemental jurisdiction").  The Golf Club Defendants request that this Court consider their opposition as a motion to dismiss these claims on the basis of futility.  (Defs. Opp'n Mem. at 1 n.1.)  They argue that Plaintiffs' state claims must eventually fail, because Defendants are exempt from NYLL and the common-law causes of action are either without merit or constitute an "end run" around the NYLL exemption, which in turn makes class certification futile.  (*See generally* Defs. Opp'n Mem.)  The Court declines their invitation to consider the merits of that defense at this juncture.[6]

## I.      Class Certification

Plaintiffs move for certification of: (1) a class of "all waiters, bussers/runners, bartenders, dishwashers, kitchen staff, and all other hourly employees who worked for City of Rye, Rye Golf Club, and/or RM Staffing & Events, Inc. at any time from December 23, 2007 through the present" who allegedly have, under NYLL, unpaid overtime wages, unpaid spread-of-hours wages, and unreimbursed business expenses, and who allegedly did not receive wage notices that complied with NYLL (the "Unpaid Wage Class"); and (2) a subclass of customer-facing employees, specifically "all waiters, bussers/runners, and bartenders who worked for City of Rye, Rye Golf Club, and/or RM Staffing & Events, Inc. at any time from December 23, 2007

---

[6] Defendants City of Rye and the Rye Golf Club have not requested a pre-motion conference on the issue of dismissing the state law claims on the bases now argued in their opposition to Plaintiffs' motion for class certification. *See* Individual Practices, Rule 3.A.ii.  Moreover, such merits inquiries are inappropriate at the class certification stage. *Amgen*, 133 S. Ct. at 1194-95.  Therefore, neither the question of whether the City and its wholly-owned golf club are exempt from the NYLL claims nor the Golf Club Defendants' arguments against Plaintiffs' New York common law claims are properly before the Court.

through the present" who have allegedly had gratuities withheld in contravention of either NYLL or New York common law under theories of breach of contract, quantum meruit, unjust enrichment, and conversion (the "Unpaid Tips Subclass").  (*See* Pls. Mem. at 1, 11.)

### a.   Rule 23(a) Prerequisites

#### i.   *Numerosity—Rule 23(a)(1)—and Implied Requirement of Ascertainability*

Under Rule 23(a)(1), numerosity is presumed where a putative class has 40 or more members.  *Shahriar*, 659 F.3d at 252.  Plaintiffs assert—and Defendants do not dispute—that records provided show at least 228 individuals in hourly positions were employed during the class period.  (Pls. Mem. at 12.)  As for the subclass, Plaintiffs assert, again without opposition, that "most of the individuals" on the list provided, including all Named Plaintiffs and "most of the 50 opt-in plaintiffs," were tipped employees.  (*Id.*)  Courts often find numerosity of a proposed class on the basis of undisputed representations.  *Shahriar*, 659 F.3d at 252; *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014) (numerosity satisfied on the basis of undisputed representations that the class was more than 40 members).  Therefore, numerosity is satisfied for the Unpaid Wage Class and the Unpaid Tips Subclass.

Similarly, these records also provide the necessary information to make both the class and subclass ascertainable.  "An identifiable class exists if its members can be ascertained by reference to objective criteria."  *MTBE Prods.*, 209 F.R.D. at 336.  Because Plaintiffs can identify the class and subclass by reviewing Defendants' payroll records, this Court concludes that the implied ascertainability requirement of Rule 23 is met.

#### ii.   *Commonality—Rule 23(a)(2)*

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart*, 564 U.S. at 349-50 (citing *General Telephone Co. of Southwest v.*

*Falcon*, 457 U.S. 147, 157 (1982)).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.*; *see also Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 6 (2d Cir. 2015).

Plaintiffs identify four factual questions common to both classes: whether Defendants (1) had a policy of not paying wages at an overtime rate after an employee worked over 40 hours in a given work week; (2) had a policy of not paying spread-of-hours pay when an employee worked over 10 hours in a given day; (3) had a policy of failing to reimburse hourly employees for uniform maintenance costs; and (4) had a policy of failing to provide its hourly employees with wage notices.  (Pls. Mem. at 14.)  Similarly, Plaintiffs correctly assert that the common legal question of whether these practices were illegal under the NYLL and New York common law applies to both classes.  (*Id.* at 14.)  And, as Defendants note, this includes the question of whether the Golf Club Defendants can be considered "employers" under the NYLL.  (Defs. Opp'n Mem. at 3-5; *see also* Pls. Reply Mem. in Further Supp. of Pls. Mot. for Class Cert. ("Pls. Reply Mem.") at 1 ("Defendants' 'futility' defense indisputably presents a common question capable of class-wide resolution").)  Plaintiffs also recognize that "the entire case with respect to [the Unpaid Tips Subclass] boils down to the straight-forward legal question [of] whether Defendants' common policy of retaining the gratuities left by patrons is unlawful."  (Pls. Mem. at 13.)

While Defendants do not make any arguments to the contrary, this Court, conducting the necessary "rigorous" analysis of Plaintiffs' claims, recognizes that in addition to the factual policy questions above, there may be certain factual distinctions between individual class members.  For example, some employees may not have worked overtime or may not have had to

purchase or maintain uniforms.  These distinctions, however, relate to the individual damage

calculations for members of the class and subclass.  *See Jacob*, 602 F. App'x at 7 (in the related

but more stringent predominance inquiry, the requirement can be satisfied as to questions of

liability irrespective of the individualized damages inquires).  "[B]ecause commonality does not

mean that all issues must be identical as to each member, the need for an individualized

determination of damages suffered by each class member generally does not defeat the

requirement."  *Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 448 (S.D.N.Y. 2010) (internal

quotation marks and citations omitted); *see also Poplawski v. Metroplex on the Atl., LLC*, No. 11

Civ. 3765 (JBW), 2012 WL 1107711, at *8 (E.D.N.Y. Apr. 2, 2012) ("While damages owed to

each employee will require individual determinations, this computation issue does not destroy

commonality.").  And, Defendants' payroll records should aide in those eventual calculations.

Thus, answers to the common policy and legal questions undoubtedly will "drive the

resolution of the litigation" with respect to all parties.  *Wal-Mart*, 564 U.S. at 349-50; *Shahriar*,

659 F.3d at 252 (commonality requirement satisfied where "Plaintiffs' NYLL class claims all

derive from the same compensation policies and tipping practices").  This satisfies the

commonality requirement.

### iii.   *Typicality—Rule 23(a)(3)*

Typicality "requires that the claims of the class representatives be typical of those of the

class."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care.*

*L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (internal quotation marks and citation omitted).  This

requirement is satisfied "when each class member's claim arises from the same course of events,

and each class member makes similar legal arguments to prove the defendant's liability."

*Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  "When it is alleged that the same

unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (citations omitted).

The undisputed allegations here are that all putative class members were subject to the same policies—whether part of the Unpaid Wage Class or Unpaid Tips Subclass. Four of the Named Plaintiffs have provided declarations in support of class certification demonstrating that, for at least some period of time within the class period, they were subjected to all of the allegedly unlawful compensation practices. For example, Named Plaintiff Rvin Reyes alleges he was employed from March 2010 through December 2013 (Reyes Decl. ¶ 1), was not paid overtime throughout that period (¶¶ 4-5), was forced to hand over all cash tips to his employer and never received gratuities left by patrons up through March 2013 (¶ 7), was never paid spread-of-hours wages (¶ 8), was not reimbursed for his uniform maintenance costs (¶ 9), and did not receive wage notices (¶¶ 10-11). For different periods of time, the same is also alleged by the other three Named Plaintiffs who provided declarations. (*See* Gomez Decl. ¶¶ 1, 4-5, 7-11; Bayaborda Decl. ¶¶ 1, 4-5, 7-11; Montebon Decl. ¶¶ 1, 4-5, 7-11.) And, based on the allegations in the complaint, the other five Named Plaintiffs have similarly been subjected to these policies. (*See* SAC ¶¶ 44-46 (Cruz); ¶¶ 47-48, 69 (Aguirre); ¶¶ 49-50 (Garcia); ¶¶ 51-52 (Peralta); ¶¶ 53-54 (Roxas); ¶¶ 66, 71-72, 75, 80 (all employees).)

Thus, the typicality requirement is satisfied by the record before this Court. *See Shahriar*, 659 F.3d at 252 (finding typicality satisfied where class members "were subject to the same tipping policies").

>  *iv.   Adequacy—Rule 23(a)(4)*

In order to justify a departure from "the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979), "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotation and citation omitted).  As such, Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met.  *Shahriar*, 659 F.3d at 253.

Here, between the allegations in the Second Amended Complaint and the declarations furnished by Plaintiffs' counsel, sufficient evidence is present to determine that the Named Plaintiffs are fully prepared to act as class representatives and prosecute the case, have no conflict with any class members, and will fairly and adequately protect the interests of the class and subclass.  The Named Plaintiffs were or are all hourly employees that were or are also tipped employees.  (SAC ¶¶ 40-63 (waiters, waitresses, or bartenders).)  Given that the Named Plaintiffs are all members of the Unpaid Tips Subclass, there is no risk that the interests of the subclass will be marginalized by these class representatives, or that the claims involving gratuities would be less important to them than the more general overtime and spread-of-hours claims.  *See also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.").  The adequacy requirement is, therefore, met.

**b.  Rule 23(b)(3) Requirements**

As the Rule 23(a) prerequisites have been met, this Court must determine if common

legal or factual issues predominate over individual issues and if a class action is superior to other

methods of adjudication.  Fed. R. Civ. P. 23(b)(3).  The factors to be considered during this

analysis include: the class members' interests in joint rather than individual actions, the extent of

litigation concerning the controversy already begun by class members, the desirability of the

class forum, and any difficulties in managing the class action.  Fed. R. Civ. P. 23(b)(3)(A-D).

*i.  Predominance*

In *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002), the Second Circuit

explained the predominance requirement of Rule 23(b)(3) as follows:

> "The Rule 23(b)(3) predominance inquiry tests whether proposed
> classes are sufficiently cohesive to warrant adjudication by
> representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623
> (1997).  It is a more demanding criterion than the commonality
> inquiry under Rule 23(a).  *Id.* at 623–24.  Class-wide issues
> predominate if resolution of some of the legal or factual questions
> that qualify each class member's case as a genuine controversy can
> be achieved through generalized proof, and if these particular issues
> are more substantial than the issues subject only to individualized
> proof.  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d
> 124, 136 (2d Cir. 2001).

Plaintiffs assert that all members of the Unpaid Wage Class and Unpaid Tips Subclass

were subject to the same general employment scheme and payroll practices.  (Pls. Mem. at 15.)

In objection, the Golf Club Defendants refer to Plaintiffs' allegations in the Second Amended

Complaint against another defendant, Morris Yacht and Beach Club, Inc., to argue that Plaintiffs

are ignoring the need for two separate classes of plaintiffs—those who performed work for the

golf club and those who performed work for the yacht club—in order to determine which

employees did no work for one or the other Defendant facilities.  (Defs. Opp'n Mem. at 4 n.2.)

13

But, as Plaintiffs aptly note and as discussed above, *supra* n.5, Morris Yacht and Beach Club, Inc., has been dismissed from this action.  (Pls. Reply Mem. at 1 n.1.)  Therefore, should a member of the class have worked for Defendant RM Staffing but never performed any work for the Golf Club Defendants, this issue will be resolved when allocating damages between the Defendants.  Defendants do not address Plaintiffs' other arguments in favor of predominance.

As discussed in the preceding commonality analysis, Plaintiffs' allegations center on the Golf Club Defendants' and RM Staffing's commonly applied employment policies and practices. (*See* Pls. Mem. at 17-20.)  But, in order to satisfy the more exacting predominance requirement, these common questions of law and fact must additionally be resolvable "through generalized proof" and be "more substantial than the issues subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001).  District courts "have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices."  *Murphy v. LaJaunie*, No. 13 Civ. 6503 (RJS), 2015 WL 4528140, at *7 (S.D.N.Y. July 24, 2015) (collecting cases).  This case is no different.

Generalized proof of the Defendants' policies and practices will resolve the common questions in this action—in short, whether Defendants violated the FLSA and/or NYLL by withholding or failing to provide overtime wages, spread-of-hour wages, uniform maintenance costs, wages notices, and potentially earned gratuities—and provide evidence of the breadth of the alleged problem.  *See, e.g.*, *Shahriar*, 659 F.3d at 253 (where Defendants did not deny that all class members were subject to the same tip-polling practices, and Plaintiffs provided support that all class members were subject to such practices, the predominance requirement was satisfied). Defendants have not denied that all hourly employees were subject to the same compensation

practices, and Plaintiffs support their allegations with their submission of deposition testimony from City or golf club employees and declarations from several Named Plaintiffs as part of their motion for class certification.  (Pelton Decl., Ex. 2 (deposition testimony of golf club finance employee supporting the allegation that hourly employees were not paid overtime); Pelton Decl., Ex. 1 (deposition testimony of Deputy City Controller supporting the allegation that gratuities were withheld); Reyes Decl. ¶ 8 (spread-of-hour wages were not paid), ¶ 9 (uniform maintenance costs were not provided), ¶ 10-11 (wages notices were not given); *see also* Gomez Decl. (same); Bayaborda Decl. (same); Montebon Decl. (same).) The potential plenary defenses available to the Golf Club Defendants do not affect the generalized nature of Plaintiffs' policy and practice allegations and do not impact the predominance analysis, as Plaintiffs need not prove that common legal issues will be answered in their favor, and the Court should not engage in such merits inquiries at the class certification stage.  *Amgen*, 133 S. Ct. at 1194-96; *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) ("[C]ourts in this Circuit have certified classes on state law claims that turn on the question of FLSA exemption for a particular group of employees.").

Turning to the question of whether the issues subject to generalized proof outweigh those subject to individualized proof, the only issues potentially subject to individualized proof are individual damages.  But, "proponents of class certification [need not] rely upon a classwide damages model to demonstrate predominance."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015); *see, e.g.*, *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 453, 460, 462 (N.D.N.Y. 2014) (when considering defendants' available defenses in combined FLSA and NYLL action, court held that "where individualized inquiries into damages may be necessary, Rule 23(b)(3) does not preclude class certification when common questions regarding liability predominate," particularly when employees "worked in the same office, were compensated

under the same payment plans, and allege that they were subjected to unified policies which violated the FLSA and NYLL"); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (finding that the damages calculations for tips that were allegedly unlawfully retained and distributed was a "straightforward, mechanical process"). Plaintiffs indicate, and Defendants do not dispute, that "damages for the [Unpaid Wage Class] can be calculated to a large extent from the payroll records themselves[.]" (Pl. Mem. at 20.) Plaintiffs also assert damages for the Unpaid Tips Subclass could be determined by generalized proof "based on the Defendants' records of the food and beverage revenues and reasonable inferences drawn from those records." (*Id.*) Moreover, the sample invoice sheets provided by the Golf Club Defendants in opposition to class certification, originally provided by RM Staffing to the golf club, list hours worked, overtime hours, rates, and gratuities collected—making damages calculations potentially simple for both the Unpaid Wage Class and Unpaid Tips Subclass if these aspects of the invoices are shown to be reliable.[7] (Fazzino Aff., Ex. 1.)

Therefore, the Court finds that common questions predominate.

ii. *Superiority*

To proceed under Rule 23(b)(3), common questions must not only predominate, but a class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs assert, and Defendants do not deny, that for many potential class members "the amount of damages at issue is not large enough to make individual actions feasible." (Pls. Mem. at 22.) Where the damages suffered by

---

[7] The Court recognizes that the alleged falsification of these invoices is precisely what resulted in Defendant Yandrasevich's related guilty plea and agreement to repay the City of Rye any monies fraudulently paid to RM Staffing. (*See* Fazzino Aff. ¶ 19, 22.) Nevertheless, the Golf Club Defendants do not contest that throughout the period when RM Staffing provided the personnel for the club (2007-2013) the hours worked, as listed on invoices, is accurate. Nor do they contest the gratuities listed on the pre-2009 invoices. They only contest potentially inflated hourly rates listed on the invoices beginning in 2009, which leaves open the possibility that the other categories of information will prove reliable and, thus, useful in calculating individual damages.

individual class members are small in comparison to the expense and burden of litigation, courts routinely find that a class action is superior to individual litigation. *See, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (citations omitted) ("Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually . . . . In addition, since some class members are still [defendants'] employees . . . , class members may fear reprisal and would not be inclined to pursue individual claims."). Plaintiffs also make the unrefuted assertions that "many of [the proposed class members] are immigrants who may lack familiarity with the American legal system" and "many of the putative class members are current employees of Defendants" (Pls. Mem. at 22)—both of which also favor a finding of superiority.

These considerations weigh in favor of finding that class members' interests would best be served by a joint action and that managing the class would entail minimal difficulty. This Court is not aware of any other litigation concerning this controversy, and can find no reason why this forum is less desirable than any alternative. In fact, Plaintiffs properly point out that this forum is particularly superior "because the claims of the class members all arise in the Southern District of New York." (Pls. Mem. at 23.) Furthermore, FLSA and NYLL class claims should be tried together "because it allows for a more cost-efficient and fair litigation of common disputes." *Damassia*, 250 F.R.D. at 164.

Therefore, a class action is the superior method of resolving this case.

\*   \*   \*

There is one disputed factual question which the Court must consider: the end of the class period. Plaintiffs have requested a period starting December 23, 2007, and running through the present. Defendants do not dispute the class period specifically, but the affidavit submitted along

with their opposition to class certification notes that once the Golf Club Defendants "assumed direct control over the Plaintiffs' wages and compensation . . . the City and [Rye Golf Club] duly paid all tip and gratuity compensation due to each Plaintiff."  (Fazzino Aff. ¶ 23.)  This assertion conflicts with the declarations provided by the four Named Plaintiffs.  For example, Plaintiff Reyes indicates he did not receive the tips and gratuities owed to him up from the beginning of his employment through approximately March 2013, which correlates with the timeframe when the golf club took over the employment practices and, according to Reyes, informed staff "it was the policy of Rye Golf Club and the City of Rye not to pay overtime" since the employees were now receiving tips.  (Reyes Decl. ¶ 6.)  But Reyes also alleges other employees "beginning in or around March 2013 . . . were *not* paid tips" despite also working more than 40 hours in a given week.  (*Id.* ¶ 12 (emphasis added).)  The other three declarations make the same allegations.  (*See* Gomez Decl. ¶¶ 6-7, 12; Bayaborda Decl. ¶¶ 6-7, 12; Montebon Decl. ¶¶ 6-7, 12.)  On balance, it appears that Plaintiffs have more compelling, and direct, evidence of the potential duration of the alleged claims.  As such, this Court resolves, but only for the purposes of deciding the instant motion, this factual dispute in favor of Plaintiffs.

Because the Rule 23(a) and Rule 23(b)(3) requirements have been met, class certification of the Unpaid Wage Class and Unpaid Tips Subclass is GRANTED and the class and subclass are defined as discussed above.  The claims applicable to the Unpaid Wage Class include Counts II, III, V & VI of the Second Amended Complaint, while the claims applicable to the Unpaid Tips Subclass include Counts IV & VII-X.  The potential defense that the Golf Club Defendants are not "employers" under the NYLL, along with any other available legal defenses to Plaintiffs' claims, apply to both the class and subclass.

## II.     Appointment of Class Counsel

Plaintiffs request in their motion for class certification (Pls. Mem. at 1) that counsel for the Named Plaintiffs be appointed as class counsel in the event this Court certified the Unpaid Wage Class and Unpaid Tips Subclass.  No other law firm is currently seeking appointment. Plaintiffs have retained as counsel Pelton Graham LLC,[8] which has already identified and investigated potential claims in this action, including taking all necessary discovery.  Plaintiffs' counsel is qualified and experienced in class action law and wage-and-employment litigation— specifically "wage and hour cases" that are "hybrid Rule 23 class/FLSA collective actions."  (*See* Pelton Decl.¶¶ 2-4, 6-7.)  Counsel is also willing and able to commit the necessary resources to represent the class and subclass.  (*Id.* at ¶ 5.)  Defendants do not challenge these assertions.  *Cf. Kimber v. Tallon*, 556 F. App'x 27, 28 (2d Cir. 2014) (abuse of court's discretion not to weigh the "significant considerations" of class counsel's "lack of resources and its inexperience in federal class actions").

Thus, the Court finds that Pelton Graham LLC satisfies Rule 23(g)'s requirements and APPOINTS it as class counsel.

## III.    Notice to the Class and Subclass

Plaintiffs provide a proposed joint notice for the Unpaid Wage Class and Unpaid Tips Subclass with their certification motion.  (Pelton Decl., Ex. 9.)  Defendants do not request any revisions to the proposed notice.  When this Court conditionally certified a collective action under 29 U.S.C. § 216(b), notice was sent to employees based on the records provided by Defendants and, based on that notice, 50 employees opted-in.  Class actions under Rule 23 are opt-out rather than opt-in, *see Shahriar*, 659 F.3d at 247, but Plaintiffs' prior successful efforts in

---

[8] During the pendency of this motion, Pelton & Associates, PC, appears to have been reconstituted as Pelton Graham LLC.

contacting at least 20 percent of the potential class and advising them of the FLSA action weighs in favor of accepting their proposed notice and proposed method for contacting class members as the "best notice that is practicable" in these circumstances.  Fed. R. Civ. P. 23(c)(2)(B).

This Court finds that the proposed joint notice for the class and subclass, per the requirements of Rule 23(c)(2)(B), "clearly and concisely," in straightforward language, states (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) the ability of a class member to enter an appearance in the class action through an attorney; (5) the ability to opt-out of the class; (6) the time and manner restrictions on doing so; and (7) the binding nature of a class judgment on all individuals the Court finds to be members of the class, who did not request to be excluded.

The Court, therefore, DIRECTS the approved notice be sent to all class members identifiable through reasonable effort.  The Court also directs Defendants to provide to Plaintiffs the names, addresses, phone numbers, and email addresses of all potential plaintiffs in order to effectuate such notice.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification, appointment of class counsel, and provision of notice to the class is GRANTED and this Court ORDERS:

1. The Unpaid Wage Class of "all waiters, bussers/runners, bartenders, dishwashers, kitchen staff, and all other hourly employees who worked for City of Rye, Rye Golf Club, and/or RM Staffing & Events, Inc. at any time from December 23, 2007 through the present" who allegedly have, under NYLL, unpaid overtime wages, unpaid spread-of-hours wages, and unreimbursed business expenses, and who allegedly did not receive wage notices that complied with NYLL is hereby certified;

2. The Unpaid Tips Subclass of customer-facing employees, specifically "all waiters, bussers/runners, and bartenders who worked for City of Rye, Rye Golf Club, and/or RM Staffing & Events, Inc. at any time from December 23, 2007 through the present" who have allegedly had gratuities withheld in contravention of either NYLL or New York common law under theories of breach of contract, quantum meruit, unjust enrichment, and conversion is hereby certified;

3. Named Plaintiffs Rvin Reyes, Israel Cortes Cruz, Edison Aguirre, Benigno Peralta, Jr., Gerry Roxas, Aries Beltran Bayaborda, Bencher Montebon, Arniel Gomez, and Sheridame Garcia are appointed as class representatives for the Unpaid Wage Class and Unpaid Tips Subclass;

4. Pelton Graham LLC is appointed as class counsel;

5. On or before August 29, 2016, Defendants shall provide to Plaintiffs the names, addresses, phone numbers, and email addresses of all potential plaintiffs, as defined in paragraph 1 above, in both paper form and digitally in Microsoft Word or Microsoft Excel format;

6. The class action notice, entitled NOTICE OF PENDENCY OF CLASS ACTION ("Notice"), attached to the Declaration of Brent E. Pelton, Esq. as Exhibit 9 is hereby approved for mailing to potential class members, providing class members (30) days to opt-out of the class;

7. Plaintiffs shall mail the Notice to all potential plaintiffs no later than ten (10) days following Defendants' disclosure of the contact information for the potential class members;

8.  Defendants shall post in their Rye Golf Club location the Notice, immediately upon receipt thereof, in a conspicuous location visible to all potential class members, and Defendants shall make copies of the Notice available to such potential class members; and

9.  To opt-out of this action, a potential class member must send a written request which is postmarked, faxed, or emailed to class counsel no later than thirty (30) days after the date of the mailing of the Notice. At the conclusion of the opt-out period, class counsel shall promptly file with the Court a list of all potential class members who opted-out, attaching copies of their individual opt-out submissions.

The parties are directed to appear for a pre-trial conference on November 18, 2016 at 10:30 a.m. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 108 and to re-audit the filing of Plaintiffs' Second Amended Complaint (ECF No. 95) to provide Plaintiffs the opportunity to correct the case caption.

Dated:   July 28, 2016
         White Plains, New York

                                          SO ORDERED:

                                          _____
                                          NELSON S. ROMÁN
                                          United States District Judge

22