IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/2017

| | |
|---|---|
| RVIN REYES, ISRAEL CORTES CRUZ, EDISON AGUIRRE, BENIGNO PERALTA, JR., GERRY ROXAS, ARIES BAYABORDA, BENCHER MONTEBON, ARNIEL GOMEZ and SHERIDAME GARCIA, Individually and on Behalf of All Others Similarly Situated, <br><br> ARIEL ESTRADA, AURORA CAMARDELLA, BERNARD JACOBSON, BLANCA RAMOS, CARMEN DIAZ, DANIA NAVARRO, DESIREE FEBUS, DIONE ZACKERY, ESTELA SANTIAGO, FRANK HUTCHINSON, GIDDEL CONTRERAS, GREGORY LESPERANCE, GREGORY TAYLOR, IRIS FEBUS, JACEK SZEWCZYK, JAYSON ARCE, JOMAR S. ROBLES, KELVIN G. GARY, LUIS FLORES RAMIREZ, MARCO TORRES, MARCO GONZALEZ, MARK PHILIP OLAYVAR, MATTHEW STAMPS, MIKE KHALIL, MIRIAM GONZALEZ, NITO BONAOY, OYLIN HUGH, PIERROT LESPERANCE, POLICARPIO CALPITO, RAFAEL MEDINA, RAYQUAN HENDERSON-WARREN, REBECCA K. WARD, REY GALAROSA, ROBERT LEMUS, ROBERT MEAD, RODEL JANARIO, SHEILAH O'LEARY SCHMIDT, SOBIELKY PAULINO, VICTOR VILLASIN, VICTORIA SAMANIEGO, ZACHARY D'ALBA, WOJCIECH WEGLARZ, ROSSANA QUICHIZ, RICHARD BARRELLA, ZACHARY COHEN, As Part of A Conditionally Certified FLSA Class, <br><br> Plaintiffs, <br><br> -against- <br><br> CITY OF RYE, RYE GOLF CLUB, RM STAFFING & EVENTS, INC. and SCOTT YANDRASEVICH, Jointly and Severally, <br><br> Defendants. | 13 Civ. 9051 (NSR) |

# [~~PROPOSED~~] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPROVAL OF CLASS COUNSEL'S FEES AND COSTS

The above-captioned matter came before the Court on Plaintiffs' Motion for Final Approval of Class Settlement and Approval of Class Counsel's Fees and Costs ("Motion for Final Approval") (Dkt. Nos. 141-143).

## I.  Background and Procedural History

1. The parties' proposed settlement resolves all claims in the action entitled *Rvin Reyes, et al. v. City of Rye, et al.*, Civil Action No. 13 Civ. 9051 (NSR) (the "Litigation"), which is currently pending before this Court.

2. The Plaintiffs in this action allege that Defendants failed to pay overtime premiums for the hours that they worked over 40 in a given workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), §§ 650 *et seq.* and supporting regulations. Plaintiffs further allege that Defendants failed to provide all tips and gratuities earned to Plaintiffs, pay spread-of-hours premiums for days in which Plaintiffs worked over ten (10) hours in a day, reimburse for uniform maintenance costs, and failed to provide wage notices, in violation of the NYLL.

3. On December 23, 2013, the Named Plaintiffs filed their Complaint as a putative class action under Fed. R. Civ. P. 23 and as a collective action under the FLSA. (*See* Dkt. No. 1). Plaintiffs subsequently amended their complaint on May 12, 2014 (Dkt. No. 26) and July 29, 2016. (Dkt. No. 118). The Named Plaintiffs were servers and bartenders who worked for Defendants and who allege that they and other hourly employees were not provided with their earned tips and gratuities, paid overtime premiums when they worked in excess of forty (40) hours in a given workweek, spread-of-hours premiums when they worked in excess of ten (10)

hours in a given day, paid uniform maintenance pay, and that they were not provided with wage notices as required by the NYLL. (*See id.*). Defendants City of Rye and Rye Golf Club (the "City Defendants" or "Rye") filed their Answer on April 25, 2014 (Dkt. No. 19), their Answer to the Amended Complaint on May 28, 2014 (Dkt. No. 32), and their Answer to the Second Amended Complaint on August 11, 2016 (Dkt. No. 119), disputing the material allegations and denying any liability in the proposed class action. The Parties entered into a stipulation of dismissal without prejudice as to defendant Morris Yacht & Beach Club, Inc. (Dkt. No. 30). Plaintiffs filed a request to enter default against non-answering defendants Scott Yandrasevich and RM Staffing & Events, Inc. (Dkt. No. 63).

## II. Overview of Investigation and Discovery

4. During the pendency of the litigation, Plaintiffs' counsel conducted substantial investigation and prosecution of the claims in the lawsuit, including, but not limited to, discussions with the Named Plaintiffs and additional plaintiffs who opted into this action, briefing a motion for conditional certification of an FLSA collective (Dkt. Nos. 34-36) and a motion for Rule 23 class action certification (Dkt. Nos. 108-110), reviewing thousands of pages of time and payroll records, invoices, revenue and expense documents, event sales and contract documents and other relevant documents, responding to Defendants' discovery demands, conducting depositions of defendants, preparing for and attending three (3) settlement conferences, and engaging in significant settlement negotiations. (Pelton Decl. ¶¶ 16-17).

## III. Settlement Negotiations

5. Over the course of the litigation, the parties engaged in informal and formal settlement negotiations. (*Id.* ¶ 17). The parties exchanged documents for review including thousands of pages of time and payroll records, invoices, revenue and expense documents, event

sales and contract documents and other relevant documents, which Plaintiffs analyzed in compiling a damages analysis that was exchanged with Defendants, which Defendants analyzed and responded to. (*Id.*). In addition, the parties prepared for and attended three (3) settlement conferences with Magistrate Judge Paul E. Davison. (*Id.*).

6. At the last settlement conference on November 23, 2016, the parties reached a settlement in principle and subsequently negotiated the remaining terms of the settlement (*see id.*), which have been memorialized in a formal Settlement Agreement and Release (the "Settlement Agreement"), attached to the Pelton Decl. as Exhibit B.[1]

7. At all times during the settlement negotiation process, negotiations were conducted at an arm's-length basis.

8. The Parties agreed to settle this case for a total Settlement Amount of $1,000,000.00 (the "Settlement Amount"). (Ex. B (Settlement Agreement) § II ¶ 17, § III ¶ 23). After deduction of attorneys' fees and costs, service awards for the Named Plaintiffs and settlement administration costs, the remaining funds will be allocated among Eligible Class Members. (Ex. B § 2 ¶ 17, § III ¶ 23). All current and former waiters, bussers/runners, bartenders, dishwashers, kitchen staff, and all other hourly employees who worked for City of Rye, Rye Golf Club and/or RM Staffing & Events, Inc. at any time from December 23, 2007 through July 28, 2016 (the "Class" or "Class Members") are eligible to participate in the Settlement. (Ex. B § II ¶ 3). The Class includes a subclass consisting of waiters, bussers/runners, and bartenders who worked for City of Rye, Rye Golf Club and/or RM Staffing & Events, Inc. at any time from December 23, 2007 through July 28, 2016 (the "Unpaid Tips Subclass"). (*Id.*).

9. Named Plaintiffs, Opt-in Plaintiffs, and Class Members who return a valid Claim Form, and do not opt-out of the Settlement shall be "Eligible Class Members" and will receive a

---
[1] All exhibits referenced herein are attached to the Pelton Decl.

4

portion of the Settlement Fund after deduction for attorneys' fees and costs and settlement administrator fees, which will be allocated by the number of total full-time and part-time workweeks worked at Rye, and whether that Eligible Class Member is also a member of the Unpaid Tips Subclass. (*See* Ex. B (Settlement Agreement) at § III ¶ 35). As the majority of the claims of the Class are based upon allegedly withheld and/or unpaid tips, Unpaid Tips Subclass weeks will be allocated four (4) times the recovery as weeks worked by Eligible Class Members who are not members of the Unpaid Tips Subclass. (*Id.*).

10. The amounts paid to Class Members will be allocated fifty percent (50%) as W-2 wage payments and (50%) as non-wage liquidated damages and interest, such that all W-2 payments shall be subject to payroll and withholdings taxes. (*Id.* at § III ¶ 42).

11. All Named Plaintiffs, Opt-in Plaintiffs and Class Members who mail their Claim Forms to the Settlement Administrator no later than ninety (90) days from the date of the mailing of the notice of settlement and do not opt-out will be eligible to participate in the Settlement. (Ex. B § III, ¶ 33).

12. Payments to Eligible Class Members will be distributed within forty-five (45) days of the entry of the Final Approval Order and Judgment, or if appealed, within forty-five (45) days of any final decision affirming the Final Approval Order and Judgment. (*Id.* at § III ¶ 38).

13. Any funds held by the Settlement Administrator after the expiration of the deadline to request and negotiate replacement checks shall: (1) be redistributed to all other Eligible Class Members; or (2) in the event that it costs more to redistribute the funds than is available for redistribution, donated the funds to Nova Hope for Haiti. (*Id.* at § III ¶ 39).

## IV. Preliminary Approval of Settlement and Dissemination of the Notice

14. On March 20, 2017, the Court preliminarily approved the parties' proposed class settlement and authorized the issuance of Notice to Class Members. (*See* Dkt. No. 140). The Court also approved the Proposed Class Settlement Notice ("Notice") and authorized the mailing of the Notice to the Class Members. (*See id.*)

15. Pursuant to the Court's Order (*see id.*), Class Counsel provided the Settlement Administrator with a confidential list of Class Members which included, to the extent included in Defendants' records, the Class Members' names and last known address. (Pelton Decl. ¶ 4; Salhab Decl. ¶ 3). The Settlement Administrator mailed the Notice and Claim Form to the Class Members via First Class Mail on April 11, 2017. (*Id.* at ¶ 4).

16. If a Class Member's Notice was returned by the USPS as undeliverable without a forwarding address, the Settlement Administrator performed an advanced address search ("skip trace") on the address using a nationally recognized location service. (Pelton Decl. ¶ 5; Salhab Decl. ¶ 6). As of the date of this Order, of the eighty-nine (89) Notices that were mailed to Class Members, there were eleven (11) Notices that were undeliverable because the settlement administrator was unable to locate the Class Members' current mailing address. (Pelton Decl. ¶ 5; Salhab Decl. ¶ 6).

17. The Notices advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information regarding the case and settlement. (Pelton Decl. ¶ 6).

## V. Contributions of the Named Plaintiffs

18. The Named Plaintiffs were integral in initiating this class action and made significant contributions to the prosecution of the litigation. (*See* Pelton Decl. ¶ 10). The Named

6

Plaintiffs served the class by providing detailed factual information regarding their job duties and hours worked, and the job duties and hours worked of the class members, assisting with the preparation of the complaint, producing documents in support of their claims, relaying information to Class Members during the pendency of this case and assuming the burden associated with assisting with litigation. (*Id.* at ¶¶ 11-12). In addition, the Named Plaintiffs also attended a three (3) settlement conferences, and shouldered the risks incurred as Named Plaintiffs. (*Id.* at ¶¶ 12-14).

19. The Named Plaintiffs also assumed other professional risks and burdens, including the potential for retaliation and blacklisting in the industry.

20. Without the effort of the Named Plaintiffs, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved.

21. Service Awards of this type are commonly awarded in complex wage and hour litigation.

## VI. Final Approval of Class Settlement

22. The Court held a fairness hearing on June 30, 2017.

23. Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearing, and the complete record in this matter, for good cause shown, the Court (i) grants final approval of the settlement memorialized in the Settlement Agreement, attached to the Pelton Decl. as Exhibit B; (ii) approves the service payments to the Named Plaintiffs in the amount of $2,500 each; and (iii) approves an award of attorneys' fees in the amount of $328,321.40 (one-third (1/3) of the Settlement Amount after subtracting costs) and reimbursement of litigation expenses in the amount of $3,880.81.

24. Under Fed. R. Civ. P. 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable and adequate." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 04 CIV. 8141 DAB, 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669 (BMC), 2012 WL 5874655, *2 (E.D.N.Y. Nov. 20, 2012) (Cogan, J.) citing *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal- Mart Stores*, 396 F.3d at 116 (internal quotations omitted).

25. If the settlement was achieved through experienced counsels' arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 WL 5874655, at *2, citing *In re Top Tankers, Inc. Sec. Litig.*, 06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008)(same); "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id., citing Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id.* (citations omitted).

8

### A. Procedural Fairness

26. It is clear from the history of the case that the parties reached this settlement only after engaging in extensive investigation and discovery which allowed each side to assess the potential risks of continued litigation, and robust settlement discussions, including several discussions via telephone and email and three (3) settlement conferences. The settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery.

### B. Substantive Fairness

27. In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recover; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 5874655 at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

28. Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

9

29. The response to the settlement has been positive. There have been no requests for exclusion or objections to the Settlement. (Pelton Decl. ¶ 9). "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344–45 (S.D.N.Y.2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion). Thus, this factor weighs strongly in favor of approval.

30. The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted). The parties' discovery here meets this standard. Class Counsel has interviewed several current and former employees of Defendants to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed thousands of pages of documents including but not limited to time and payroll data and employee files; provided 26(a) disclosures; fielded questions from Plaintiffs and Class Members; drafted and exchanged demands for interrogatories and the production of documents with Defendants and drafted and exchanged responses to requests for interrogatories and demands for the production of documents for the named plaintiffs with hundreds of pages of documents; performed extensive legal research; conducted party depositions; and compiled and negotiated a damages analysis and

discussed the same on the telephone and email; and engaged three (3) settlement conferences. (Pelton Decl. ¶¶ 16-17).

31. The risk of establishing liability and damages further weighs in favor of final approval. A trial on the merits would involve risks because Plaintiffs would have to defeat Defendants' arguments that, *inter alia*, the Plaintiffs were paid in accordance with the federal and state law. "Litigation inherently involves risks." *Massiah*, 2012 WL 5874655 at *4. The settlement alleviates this uncertainty. *See In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

32. The risk of maintaining the class status through trial is also present. Plaintiffs' Rule 23 class certification motion was highly contested. Specifically, Defendants would likely seek to decertify and argue that there are individualized questions as to the job duties and payment structure for the class members that makes trial and judgment on a class-wide basis impractical. Settlement eliminates the risk, expense, and delay inherent in this process. *Massiah*, 2012 WL 5874655, at *5.

33. The parties negotiated heavily over the settlement amount taking into account Defendants' ability to pay a settlement that would compensate the class for their alleged unpaid wages. Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor does not hinder granting final approval.

34. The substantial amount of the settlement weighs strongly in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (W.D.N.Y.

11

2005) *citing In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 and *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). "'Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."' Moreover, when a "settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *Massiah*, 2012 WL 5874655 at *5 (citations omitted). The eighth and ninth Grinnell factors favor final approval.

### VII. Approval of the FLSA Settlement

35. The Court hereby approves the FLSA settlement.

36. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 5874655, at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement.

37. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bone fide disputes. *See Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 at 1353–54 (11th Cir.1982). If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7.

38.     The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation, and that the settlement terms are fair and appropriate.

**VIII.   Dissemination of Notice**

39.     Pursuant to the Preliminary Approval Order, Notice was sent by first-class mail to each identified Class Member at his or her last known address (with re-mailing of returned Notices). (Pelton Decl. ¶¶ 4-5). The Court finds that the mailed Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted June 30, 2017. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

**IX.    Award of Fees and Costs to Class Counsel and Service Awards to Named Plaintiffs**

40.     Class Counsel did substantial work identifying, investigating, prosecuting, and settling the Named Plaintiffs' and the Class Members' claims.

41.     Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage-and-hour law and in class action law.

42.     The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class' interests.

43.     The Court hereby awards Class Counsel $328,321.40 in attorneys' fees or one-third (1/3) of the Settlement Fund after subtracting Class Counsel's actual litigation costs and settlement administration fees.

44.     The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See*

13

*McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir.2005); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method).

45. Class Counsel's request for one-third (1/3) of the settlement amount is reasonable and "consistent with the norms of class litigation in this circuit." *See, e.g., Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. March 24, 2008) (awarding 1/3 of $450,000.00 common fund in wage and hour case); *In re Arotech Corp. Sec. Litig.*, No. 07-CV-1838, 2010 U.S. Dist. LEXIS 55570, 2010 WL 2301195, at *7 (E.D.N.Y. June 7, 2010) ("33% of the common fun is considered routine and therefore reasonable . . . ."). Class Counsel's attorneys' fees request of thirty-three percent (33%) is in line with decisions in this Circuit which have routinely awarded between thirty and thirty-three percent (30-33%) of the settlement fund as attorneys' fees in wage and hour cases. *See, e.g., Thornhill v. CVS Pharmacy, Inc.*, No. 13 Civ. 5507 (JMF), 2014 U.S. Dist LEXIS 37007, at *7-8 (S.D.N.Y. March 20, 2014) (noting that, "[i]n this Circuit, courts typically approve attorneys' fees that range between 30 and 33 percent" and citing cases) (citing *Guzman v. Joesons Auto Parts*, No. 11 Civ. 4543 (ETB), 2013 U.S. Dist. LEXIS 83342, 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013) (collecting cases)).

46. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of one-third (1/3) of the settlement amount is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110, 111–12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), where the Court held that a

14

"presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third (1/3) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success.

47. Even evaluating the attorneys' fees requested by Class Counsel under the "lodestar method," the request for $328,321.40 is also reasonable under the *Golderberger* factors. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

48. The attorney and paralegal hourly billing rates ranging from $125 per hour for paralegals to $450 per hour for senior partners are within the range awarded in wage and hour cases in this district. *See Hall v. Prosource Techs., LLC*, No. 14-cv-2502 (SIL), 2016 U.S. Dist. LEXIS 53791, at *41-44 (E.D.N.Y. April 11, 2016).

49. The attorneys' fee award represents a 1.66 multiplier of Class Counsel's stated lodestar, which is reasonable in light of the *Goldberger* factors (discussed at length in Plaintiffs' Memo. Of Law in Support of their Motion for Final Approval), and is in line with other cases in the Second Circuit. *See, e.g., Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014) (holding that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases," and applying multiplier of 2.28 to the modified lodestar); *see also In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691, 2015 WL 4560206, at *3 (S.D.N.Y. July 7, 2015) ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.").

15

50. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $3,880.81, which is to be paid from the settlement amount.

51. The attorneys' fees awarded and expenses reimbursed, shall be paid from the settlement amount.

52. The Court finds reasonable service awards to the Named Plaintiffs in the amount of $2,500.00 each. These amounts shall be paid from the settlement. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See Toure*, 2012 WL 3240461 at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); *Sewell*, 2012 WL 1320124 at *14–15 (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); *Reyes*, 2011 WL 4599822 at *9 (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); *Willix*, 2011 WL 754862 at *7 (approving service awards of $30,000, $15,000, and $7,500); *Torres*, 2010 WL 5507892 at *8 (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Khait*, 2010 WL 2025106 at *9 (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); *see also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any

other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

53. Finally, the Court finds the Settlement Administrator fees of approximately $11,155.00 reasonable. Without the Settlement Administrators, Class Members would not have received notice of the settlement, nor would they receive their share of the settlement proceeds. The Settlement Administrator's work included an initial mailing of the settlement notice and claim form along with a business reply envelope (collectively, "Notice Package") to the two-hundred forty-three (243) Class Members, taking reasonable steps to obtain the correct addresses of all Class Members, remailing any returned Notice Packets and sending reminder notices, obtaining and recording claim forms, objections and opt-out statements. (*See* Declaration of Keith Salhab, annexed to Pelton Decl. as Exhibit A). The Settlement Administrator has additional work to complete the administration given the extended claim period and the issuing of settlement checks to Eligible Class Members. "Courts regularly award administrative costs associated with providing notice to the class." *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Ca. 2015); *see also Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (noting "Courts within this district have awarded up to $50,000 for the settlement claims administrator" and finding estimated fees of $33,500 to the settlement administrator as reasonable); *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 at *46-47 (S.D.N.Y. 2014) (awarding reimbursement of $7,985.74 to class counsel for up front settlement administration fees and approving further estimated fees of $34,000). The Settlement Administrator's fee should be paid from the Settlement Fund.

X. **Conclusion and Dismissal**

54. The Court approves the terms and conditions of the Settlement Agreement.

17

55. The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

56. The entire case is dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind, and have res judicata effect with respect to all Rule 23 Class Members.

57. The Court approves and incorporates herein by reference the releases and waivers set forth in the Settlement Agreement which shall be binding upon the Class Members as set forth in such agreement.

58. Neither this Order, Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law or rules, (b) that any party has prevailed in this case, or (c) that the Defendants or others have engaged in any wrongdoing.

59. Without affecting the finality of this Final Order, the Court will retain jurisdiction over the case following the entry of the Judgment and Dismissal until 30 days after the end of the time for class members to cash their settlement check has expired, as defined in the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

60. This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

The Clerk of the Court is requested to terminate the motion (doc. 141).

It is so ORDERED this __30th__ day of __June__, 2017.

_____
Honorable Nelson Stephen Román
United States District Judge